**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 10-428-SLR-MPT |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| APPLE INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 11-165-SLR |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AMAZON.COM INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' CONSOLIDATED ANSWERING CLAIM CONSTRUCTION BRIEF

Dated: November 9, 2012

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................. 2

     A.    Subject Matter of the Patents-in-Suit. ................................................. 2

     B.    GBT's Forum-Shopping Litigation History. ....................................... 3

     C.    GBT's Asserted Claims Are Invalid and Not Infringed. ..................... 4

III.    LEGAL STANDARDS ....................................................................... 5

IV.    ARGUMENT ...................................................................................... 6

     A.    The Claimed "Preamble" Is Spread Before Transmission. .................. 6

         1.    The Specification Teaches that the Preamble Is Spread Before
Transmission. ........................................................................... 7

         2.    In the Original '267 Prosecution, GBT Confirmed that the
Preamble is Spread the Same Way that Data is Spread. ........... 9

         3.    The Texas Court Adopted GBT's Agreed Construction That a
Preamble is Spread Before Transmission. ............................... 10

         4.    Collateral Estoppel Prohibits GBT From Challenging the Texas
Court's Construction of "Preamble" / "Access Preamble." .... 11

         5.    GBT Re-Confirmed During the '267 Reexaminations and '427
Prosecution that the Preamble is Spread Before Transmission. ............. 13

         6.    The Claim Language Is Consistent With GBT's Prior Definition
that the Preamble Is Spread Before Transmission. ................... 16

         7.    The Court Should Reject GBT's "Message Data" Limitation. ................ 18

         8.    The Court Should Reject GBT's Attempt to Inject the Limitation
of "Codes Used to Distinguish One Preamble from Another." .............. 20

     B.    "Packet Data" ..................................................................................... 21

     C.    "Discrete Power Level." ..................................................................... 22

         1.    The Ordinary Meaning of Transmitting "At a Discrete Power
Level" is a Constant Distinct Power Level. ............................. 22

         2.    The Specification Describes Preambles Transmitted At Constant
Distinct Power Levels. ............................................................. 22

         3.    During Prosecution, GBT Confirmed That Each Preamble "Power
Level" is Constant. .................................................................. 24

         4.    GBT Confirmed During Prosecution that "Discrete" Power Levels
Are Distinct Power Levels. ...................................................... 26

**TABLE OF CONTENTS**
**(continued)**

5.  GBT Submitted Its Agreed Construction of "Constant Distinct Power Level" During the '267 Reexamination........................................ 27

D.  Transmitting "If No Acknowledgement Is Detected/Received." ........................ 27

V.  CONCLUSION............................................................................................ 30

# TABLE OF AUTHORITIES

Page

C<small>ASES</small>

*Abbott Labs. v. Baxter Pharm. Prods., Inc.*,
   334 F.3d 1274 (Fed. Cir. 2003).............................................................................15

*Alexam, Inc. v. Best Buy Co., Inc.*,
   No. 2:10-cv-93, 2012 WL 1188406 (E.D. Tex. Apr. 9, 2012) .........................................13, 12

*Biovail Laboratories Int'l SRL v. Intelgenx Corp.*,
   C.A. No. 09-605-LPS, slip op. (D. Del. Dec. 27, 2010)............................................11

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
   418 F.3d 1225 (Fed. Cir. 2005).............................................................................18

*Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*,
   No. 07-2768, 2011 WL 941870 (E.D. Pa. Mar, 17, 2011) .....................................12

*CVI/Beta Ventures, Inc. v. Tura LP*,
   112 F.3d 1146 (Fed. Cir. 1997).............................................................................15, 16

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
   547 F.3d 266 (5th Cir. 2008) .................................................................................4

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
   527 F.3d 1318 (Fed. Cir. 2008)...........................................................................3, 11

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*
   222 F.3d 951 (Fed. Cir. 2000)...............................................................................15, 16

*Howard Hess Dental Labs. v. Dentsply Int'l. Inc.*,
   602 F.3d 237 (3d Cir. 2010)..................................................................................11

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004).............................................................................6, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).............................................................................5, 7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   C.A. No. 08-309-JJF-LPS, 2009 WL 4928029 (D. Del. Dec. 18, 2009)................12

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005).............................................................................6, 9

*Springs Window Fashions L.P. v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003)............................................................................................5, 6, 9

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)............................................................................................15

## I.    INTRODUCTION

These cases are GBT's second attempt to claim credit for an alleged invention that it did not create. In its prior Texas case, GBT agreed to constructions of the two key terms here—"preamble" and "discrete power level"—that were the correct constructions in view of the intrinsic evidence, including GBT's arguments to the Patent Office. After the Texas court and Federal Circuit held GBT's asserted claims were invalid over the prior art, GBT seeks a second bite at the apple in this Court, with only slightly modified claims. GBT's new claims are no better than its previous ones. Moreover, GBT now argues constructions inconsistent with the constructions it argued to the Texas court, the Federal Circuit, and the Patent Office. The only reason the Court needs to address these terms is that GBT refuses to honor the positions it previously advocated.

The intrinsic evidence makes clear that the claimed "preamble" is spread before transmission and that a "discrete power level" is a constant distinct power level. The specification emphasizes that the preamble is "spread" before transmission, and describes that "[t]he transmitted power during each preamble is constant." During prosecution of its original '267 patent, GBT confirmed these meanings and disclaimed any broader scope. GBT distinguished the prior art on the basis that the preamble in GBT's claimed invention "is spread" and that the power of each preamble must be "completely at" a certain "level" throughout the "complete transmission" of the preamble.

These meanings and disclaimers from the original '267 patent specification and file history apply equally to the claims that issued "downstream" in the '267 reexamination and the continuation '427 patent. There are no relevant differences in the claim language between the current claims and the original '267 claims addressed in the Texas case, and nothing in the

reexamination or '427 prosecutions disavowed these meanings; to the contrary, GBT submitted its definitions to the Patent Office and expressly requested that the Examiner consider them.

GBT has now apparently realized that its prior proposed constructions, while correct and required by its arguments during prosecution, will dispose of its infringement theories and undermine its invalidity arguments in the present cases. GBT has therefore changed its positions, based not on the intrinsic record but on GBT's desired outcome. The Court should decline GBT's invitation to err and should construe the terms according to the correct constructions that Defendants propose, which are the same constructions that GBT itself previously embraced.

GBT also attempts to import a narrowing limitation, "within a set time," into claim language directed to re-transmitting the preamble if no acknowledgement is detected. GBT's proposed construction is unclear as to what the "set time" is intended to be, and GBT identifies no support in the record requiring its construction.

## II.    BACKGROUND

### A.    Subject Matter of the Patents-in-Suit.

Defendants dispute GBT's "Background," but do not rebut GBT's assertions point-by-point herein as they are largely irrelevant to claim construction.

The claimed inventions allegedly relate to a random access channel ("RACH") ramp-up procedure by which a remote station (such as a mobile phone) in a wireless network establishes communication with a base station by transmitting a series of "preambles," each at a discrete power level, until the remote station receives an acknowledgement from the base station. *See*, *e.g.*, '427 Patent, col. 5:42-60, Fig. 6.[1]    The specification describes an embodiment where the

---

[1] The '267 and '427 patents share the same relevant written description. For convenience, Defendants cite the '427 patent specification herein.

2

remote station transmits preambles alongside "pilot" signals as part of an access procedure. *See*, *e.g.*, '427 Patent, col. 5:17-35, 5:59-6:25, Figs. 4, 6, 7, 9A, and 9B.

The specification describes that each preamble is "spread" before it is transmitted. *See*, *e.g.*, '427 Patent, col. 5:1-18, 6:10-19, Fig. 4.[2] The specification also describes that "[t]he transmitted power during each preamble is constant." '427 Patent, col. 7:32-33; Fig. 6 (depicting constant preamble power levels).

The claimed invention and its purported improvement over the prior art, even taking GBT's positions at face value, relates at most to a narrow part of the RACH process that has no intrinsic value and is insignificant to handset makers and consumers.

### B.    GBT's Forum-Shopping Litigation History.

GBT sued Lucent and Nokia on the '267 patent in the Eastern District of Texas in 2005. (*Golden Bridge Technology, Inc. v. Nokia, Inc.*, Case No. 2:05-cv-00151-LED-JDL (E.D. Tex.).) The Texas court conducted *Markman* proceedings and issued a claim construction order that is instructive for the present case. (JA-1901-1918, 7/20/06 Texas *Markman* Order.) The Texas court then granted the defendants' motion for summary judgment that all of GBT's asserted '267 patent claims were invalid due to anticipation by two separate prior art references, IS-95 and Hakkinen. (JA-1919-1925, 1/29/07 Order.) The Federal Circuit affirmed invalidity over Hakkinen while declining to reach IS-95. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318 (Fed. Cir. 2008).

After losing in Texas and in the Federal Circuit,[3] GBT next filed suit in the Central District of California against Apple and AT&T on the '267 and '427 patents. *Golden Bridge Technology,*

---

[2] Spreading is a process by which a signal is increased in bandwidth, which allows multiple users to simultaneously share the same radio bandwidth.

[3] GBT also filed, and lost, an antitrust suit against participants in the 3GPP standardization process. The Texas court granted summary judgment against GBT and the Fifth Circuit affirmed. *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266 (5th Cir. 2008).

*Inc. v. AT&T, Inc. et al*, 2:10-cv-03801-R-SH. After the case was assigned to a judge, GBT voluntarily dismissed its complaint the same day and re-filed its case the next day in this Court against Apple, AT&T, and Motorola. (Case No. 1:10-cv-428-SLR-MPT.)

GBT also subsequently filed suit in this Court against many additional defendants. (Case Nos. 1:11-cv-165-SLR; 1:12-cv-471, -473-483.)

GBT's case against Apple has proceeded through expert discovery and is ripe for summary judgment. GBT's cases against the other Defendants are stayed, except that certain Defendants have opted to participate in these *Markman* proceedings pursuant to a stipulated protocol. (D.I. 178 (-428 case). D.I. 244 (-165 case).) This brief is filed on behalf of Defendants Apple, Amazon, Dell, HTC, HP, Lenovo, LG, Motorola, Palm, Pantech, and Sony Mobile.

GBT also recently filed suit on a different patent in the Central District of California against many of the Delaware defendants. (Case No. 2:12-cv-4014 (C.D. Cal.).) Certain defendants moved to sever, transfer, or dismiss because GBT improperly joined unrelated defendants and GBT has no relevant connection to the Central District of California. The Court granted the defendants' motion, transferred GBT's case against Apple to the Northern District of California, and dismissed the case against the remaining defendants. GBT re-filed its cases against many of the defendants in this Court.

### C. GBT's Asserted Claims Are Invalid and Not Infringed.

GBT's asserted claims[4] are disclosed or rendered obvious by U.S. Patent No. 6,606,313 to Dahlman, regardless of claim construction. The Dahlman patent was filed on October 5, 1998, five and a half months before GBT filed its '267 patent application on March 22, 1999. GBT's claims are invalid because GBT will not be able to show that it conceived of the claimed inventions prior to October 5, 1998 and diligently reduced them to practice thereafter. GBT's

---

[4] GBT asserts '267 claims 42-44, 50-52, and 58-60, and '427 claims 9, 10, 14-22, 24, and 26-28.

claims are also invalid on numerous other grounds. Some of GBT's claim construction positions seek to avoid prior art such as IS-95 and Hakkinen.

In addition, GBT's infringement case will be eliminated or greatly narrowed if the Court adopts the correct constructions of "preamble" and "discrete power level" that Defendants propose and that GBT itself previously proposed. The accused products do not transmit any preambles that are spread before transmission and nothing in the 3GPP UMTS standard requires them to do so. Similarly, the 3GPP UMTS standard does not require products to transmit preambles at constant distinct power levels. To the contrary, the standard specifically contemplates that the preamble transmission power may vary.

## III.    LEGAL STANDARDS

The Court is familiar with the canons of claim construction as set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) and other relevant case law. Defendants highlight specific legal principles only where they are particularly relevant to the issues at hand. Of particular import here, GBT's arguments and submissions during prosecution inform and limit its claims' meaning and scope. "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citation omitted). The prosecution history "often inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted).

"[I]t is well established that the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Springs Window Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) (internal quotations omitted). As such, a court "cannot construe the claims to cover subject matter

broader than that which the patentee itself regarded as comprising its invention and represented to the PTO." *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004).

The Federal Circuit does not require any particular magic words in order to effect a clear and unmistakable disclaimer during prosecution. "Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005). In other words, "by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover [and] he is by implication surrendering such protection." *Springs Window Fashions LP v. Novo Indus, L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) (citation omitted).

## IV. ARGUMENT

### A. The Claimed "Preamble" Is Spread Before Transmission.

| Claim language | GBT's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "preamble" / "access preamble" | *GBT's prior agreed and Court-ordered construction:* A signal used for communicating with the base station that is <u>spread before transmission</u>.<br><br>*GBT's prior proposed construction in the current Apple/Motorola case:* A signal used during the access procedure to facilitate establishing a communication link between a base station and a remote station.<br><br>*GBT's latest proposed construction:* An access signal without message data and comprising one or more codes that distinguish one access preamble/preamble from another and used during an access procedure to facilitate establishing a communication link between a base station and a remote station. | A signal used for communicating with the base station that is <u>spread before transmission</u>. |

Defendants propose the construction of "preamble" that GBT proposed and the Court adopted in the Texas lawsuit. The previously-ordered construction correctly reflects that the preamble in GBT's patents and asserted claims is spread before transmission.

1. **The Specification Teaches that the Preamble Is Spread Before Transmission.**

The specification teaches that a preamble is a signal used for communicating with the base station that is spread before transmission. GBT acknowledges that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." D.I. 208 (-428 case), D.I. 284 (-165 case)[5] at 17, quoting *Phillips*, 415 F.3d at 1315. Here, as the Texas court correctly observed, the construction that the preamble is spread before transmission is "consistent with the claim language and specification, *which emphasize that the preamble is spread before transmission*." (JA-1906, 7/20/06 *Markman* Order at 6 (emphasis added).) GBT also explained during prosecution that "*the access preamble. . . is spread* in essentially the same manner as other data. For example, *Fig. 4 shows spreading of the preamble* (see also p. 9, lines 12-20) . . .." (JA-289, 8/6/02 Applicant's Remarks at 5 (emphasis added).)

The specification teaches a system and method in which the information transmitted from the remote station, including preambles, is spread (increased in bandwidth) prior to transmission. Figure 4 shows structures in the remote station that spread the preamble. Preamble generator 452 (lower right side of Figure 4) generates the preamble. The preamble then passes through a packet formatter (424) and gain adjuster (425), as does other data and signaling. The preamble is then "spread" through product device 426, which multiplies the preamble with a spreading sequence that is input from spreading sequence generator 427:

---

[5] This brief will cite "D.I. 208/284" to refer to GBT's opening brief in the -428 and -165 cases.



FIG. 4

The specification describes how the preamble is spread before transmission by the remote station (RS) and is then received by a "spread-spectrum receiver" at the base station (BS):

> In the RS transmitter, data are FEC encoded by FEC encoder 422, and interleaved by interleaver 423. The *preamble generator 452 generates a preamble* and the pilot generator 453 generates a pilot for the preamble. The multiplexer 451 multiplexes the data, preamble and pilot, and *the packet formatter 424 formats the preamble, pilot and data into a common-packet channel packet*. Further, the packet formatter formats data, signaling, acknowledgment signal, collision detection signal, pilot signal and TPC signal into a packet. . . . *The packet is spread-spectrum processed by product device 426, with [a] spreading chip-sequence from spreading-sequence generator 427*.

('427 col. 5:1-18 (emphasis added).)

> The BS *spread-spectrum receiver receives the access-burst signal* at a detected-power level. More particularly, *the access-burst signal has the plurality of preambles* at a plurality of power levels, respectively. . . .The ACK signal is shown in FIG. 6, in response to the fourth *preamble* having sufficient power for detection by the BS *spread-spectrum receiver*.

('427 col. 6:10-19 (emphasis added).)

8

While Defendants acknowledge that a disclosed embodiment does not always define the claim, in this case, GBT confirmed during prosecution that the preamble is "spread," and GBT stipulated to this construction in its Texas case, as set forth below.

### 2. In the Original '267 Prosecution, GBT Confirmed that the Preamble is Spread the Same Way that Data is Spread.

During the original '267 prosecution history ("upstream" from the '267 reexaminations and the '427 patent), GBT confirmed that the claimed preamble is spread before transmission. GBT distinguished the Ozluturk prior art patent on the basis that the access preamble "is spread," in contrast with Ozluturk which GBT argued does not transmit a "spread access preamble":

> Another disclosed distinction is that **the access preamble** here is itself a form of code data (e.g. a signature) that **is spread in essentially the same manner as other data**. For example, Fig. 4 shows **spreading of the preamble** (see also p. 9, lines 12-20); and Fig. 3 shows the matched filter 315 de-spreading signals before processing for preamble recognition (see also p. 7, lines 15-20). Within one access burst the preambles may all be the same, or they may differ (see p. 13, lines 5-7). By comparison, Ozluturk teaches simply transmitting spreading codes without any data carried on the short code or access code transmissions. Transmission of a spreading code only is not a transmission of a **spread access preamble**.

(JA-289, 8/6/02 Applicant's Remarks at 5 (emphasis added).) By distinguishing its invention from the prior art on the basis that the preamble "is *spread* in the same manner as other data," GBT confirmed that the preamble is spread before transmission and disclaimed any broader claim scope. *Springs Window, L.P.*, 323 F.3d at 994; *Seachange*, 413 F.3d at 1372-73; *Microsoft*, 357 F.3d at 1349.

GBT acknowledges that this cited '267 file history passage limits the claimed "preamble" throughout the two patents. (*See* D.I. 208/284 at 16 ("the prosecution history states that the access preamble is . . .").) GBT argues only that the passage limits the claimed "preamble" in a different way, namely that the preamble requires "codes," which is incorrect as discussed below.

### 3. The Texas Court Adopted GBT's Agreed Construction That a Preamble is Spread Before Transmission.

In the Texas case, GBT agreed to the defendants' proposed construction of "preamble": "The parties have agreed to construe 'preamble,' appearing in Claims 13, 23, and 24, to mean "a signal used for communication with the base station that is *spread before transmission*." (JA-1905.) The Court expressly adopted the parties' agreed construction. (*Id.*, JA-1914.)

The Texas parties disputed the meaning of the related term "access preamble." Both sides agreed that an "access preamble" is a certain type of preamble—GBT argued that an access preamble is "a preamble selected for transmission from a set of predefined preambles," while the defendants argued it is an "un-spread preamble" (that is, a preamble "before it is spread and transmitted"). (JA-1905-1907.) The Texas court construed "preamble" and "access preamble" synonymously to mean "a signal used for communication with the base station that is spread before transmission." (*Id.*)[6]

Later in the Texas case, the defendants moved for summary judgment of invalidity. GBT maintained its agreement that a preamble is "spread before transmission," but argued that the "'preamble' of the '267 patent claims does not include message data." (JA-1930.) The Court rejected GBT's proposed "altered" construction:

> On April 4, 2006, the parties advised the Court that they had agreed on the following definition of preamble: "*a signal used for communicating with the base station that is spread before transmission*." (Docket No. 86). Neither the proposed definition nor the agreed definition preclude data within or in conjunction with a preamble. Plaintiff now appears to be attempting to alter the definition of preamble to exclude data sent within or in conjunction with the preamble. ***The Court declines to alter the agreed construction*** by finding that data may not be included within or in conjunction with the preamble.

(JA-1922, 1/29/07 Order at 4 (emphasis added).)

---

[6] The parties in the present cases agree that "preamble" and "access preamble" are synonymous throughout the claims. For convenience, Defendants may use "preamble" to discuss both terms.

After the Texas court granted judgment of invalidity, GBT did not appeal the district court's claim construction. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008). To the contrary, GBT told the Federal Circuit: "The parties stipulated that a preamble is construed as a 'signal used for communication with the base station that is spread before transmission.' . . . . *Golden Bridge Technology does not take issue with the definition of 'preamble,' which was stipulated by the parties below*." (JA-1944, GBT's 7/23/07 Opening Appeal Br. at 8 (emphasis added).) The Federal Circuit affirmed the district court's invalidity ruling. *Golden Bridge Tech., Inc.*, 527 F.3d at 1324.

### 4. Collateral Estoppel Prohibits GBT From Challenging the Texas Court's Construction of "Preamble" / "Access Preamble."

GBT is collaterally estopped from challenging the construction of "[access] preamble" that the Court ordered in the Texas case. All of the elements apply: (1) the "identical" issue (the construction of "[access] preamble"), (2) was "actually litigated" (the court construed "[access] preamble," and furthermore rejected GBT's "altered" construction), (3) was "necessary to the decision" (the invalidity judgment), and (4) GBT "was fully represented in the prior action." *Howard Hess Dental Labs. v. Dentsply Int'l. Inc.*, 602 F.3d 237, 247 (3d Cir. 2010). *See also*, *e.g.*, *Biovail Laboratories Int'l SRL v. Intelgenx Corp.*, C.A. No. 09-605-LPS, slip op. at 5 (D. Del. Dec. 27, 2010) (JA-2062, 2067-70) (applying collateral estoppel where same claim term was construed in plaintiff's prior lawsuit).

GBT's only argument against collateral estoppel is that the issue is not "identical" because "the '427 patent is a different patent, the reexamined '267 patent has different claims from those asserted in the Texas litigation, and the reexamined '267 patent has additional prosecution history that is necessarily relevant to claim construction." (D.I. 208/284 at 19.) The argument fails. The '267/'427 specification has not changed, and GBT does not point to any

11

relevant difference in the '267 or '427 claims, which recite "preamble" and "access preamble" just the same as the '267 claims litigated in Texas. Indeed, two of the currently asserted claims —'267 claims 51 and 52—are <u>identical</u> to claims 27 and 29 construed and held invalid in the Texas case, except for irrelevant dependent claim limitations.[7] And the parties agree that these terms have the same meaning throughout the '267 and '427 claims. (*Cf.* D.I. 208/284 at 13-14.)

Moreover, GBT's statements in the '267 reexamination are not relevant "new" record (*cf.* D.I. 208/284 at 19-20)—to the contrary, GBT made these arguments <u>during the Texas case</u>, and the statements do not change the meaning of "preamble" in any event as discussed further below. GBT relies on its statement that "the initial transmission is a preamble without the message," but it presented that argument to the Patent Office in September 25, 2006, while the Texas case was active and pending. (*See* D.I. 208/284 at 11, citing 9/25/06 Amendment.) The magistrate judge's summary judgment recommendation did not issue until December 7, 2006, GBT filed its objections on December 21, 2006—presenting its "preamble without the message" argument, as discussed above—and the district court issued its summary judgment order on January 29, 2007. (JA-1919.) GBT filed its notice of appeal on March 9, 2007 and filed its opening appeal brief, *reaffirming the "preamble" claim construction*, on July 23, 2007. (JA-1937.)

If GBT believed that its September 2006 reexamination statements changed the meaning of "preamble" (which they did not, as discussed below), the time to seek any relief was during the Texas case. GBT's cited cases show the error of GBT's approach. In each of *Cross Atlantic*, *Power Integrations*, and *Alexam*, the courts considered new file history from ongoing (non-final) reexamination proceedings. *See Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*, No. 07-2768, 2011 WL 941870, at *9 (E.D. Pa. Mar, 17, 2011); *Power Integrations, Inc. v. Fairchild*

---

[7] Dependent claims 51 and 52 add only that each preamble is selected from among a plurality of preambles assigned to a base station, which is irrelevant to the construction of "preamble" here.

*Semiconductor Int'l, Inc.*, C.A. No. 08-309-JJF-LPS, 2009 WL 4928029, at *16 (D. Del. Dec. 18, 2009); *Alexam, Inc. v. Best Buy Co., Inc.*, No. 2:10-cv-93, 2012 WL 1188406, at *7-8, 15 (E.D. Tex. Apr. 9, 2012).  GBT could have similarly sought relief before the final judgment in the Texas case to avoid collateral estoppel, but GBT chose not to and cannot now undo that decision.

>    **5.    GBT Re-Confirmed During the '267 Reexaminations and '427 Prosecution that the Preamble is Spread Before Transmission.**

Even if GBT were not estopped from challenging the Texas court's construction, the Texas court's construction should be adopted because it is correct.  GBT further confirmed the meaning of "preamble" during the '267 reexamination and '427 patent prosecution histories.  In the '267 reexamination,[8] GBT submitted the Texas Court's *Markman* order and specifically requested that the Examiner consider it:  "It is *respectfully requested that the documents be expressly considered during the prosecution of this application*, and that the documents be made of record therein."  (JA-797 (emphasis added), JA-803 (showing *GBT v. Nokia* claim construction order).)  GBT thereby presented to the Patent Office GBT's agreed definition of "preamble" as adopted by the Texas court, along with the Court's synonymous construction of "access preamble."  GBT did not tell the Examiner it had any different view of the meaning of "preamble"—to the contrary, GBT told the Examiner to "expressly consider" GBT's definition, and the Examiner did.  (JA-803 (Examiner initials).)

The third party who filed the second '267 patent reexamination request also specifically highlighted GBT's agreed construction of "preamble" as ordered by the Texas court:

---

[8] The '267 reexamination included two separate reexaminations that were subsequently merged into one proceeding (Control Nos. 90/007,767 and 90/008,291, merged into the -8,291 case).

| 5. | [first][second] preamble | 13, 23, 24 | *a signal used for communicating with the base station that is spread before transmission* |
| 6. | [transmitted] access preamble | 27, 29 | *a signal used for communicating with the base station that is spread before transmission* |

(JA-2076, 10/26/06 Second Request for Reexamination (Control No. 90/008,291) at 23.)  Again, GBT did not express any disagreement with its agreed and Court-ordered definition.

GBT also submitted and requested that the Patent Office "*expressly consider*[]" the Texas court's summary judgment order, which stated: "*[GBT] agreed on the following definition of preamble: 'a signal used for communicating with the base station that is spread before transmission*,'" and "[t]he Court declines to alter the agreed construction."  (JA-931-32, 2/1/07 IDS; JA-1922 (emphasis added).)  In the same filing, GBT explained its disagreement with the Court's invalidity ruling as reflected in GBT's objections to the magistrate judge's report:

> The Examiner's attention is directed to pages 6 to 10 of Plaintiffs objections and the arguments therein. The parties in the litigation have taken various positions on the teaching of the Hakkinen reference, but Applicant's position is that the reference does not disclose the mobile unit or station as ramping up power' to transmit the preamble without a power up command from a base station and that the power up command is not an acknowledgement.

(JA-932, 2/1/07 IDS at 2.)  GBT thus disputed the Examiner's interpretation of the Hakkinen reference, as discussed on pages 6-10 of the objections that GBT submitted to the Patent Office. However, GBT did not disavow its agreed, Court-ordered definition that a "preamble" is "spread before transmission."  To the contrary, as set forth on page 4 of the objections that GBT filed, GBT stated:  "As defined by this Court, *a preamble is 'a signal used for communicating with the base station that is spread before transmission.'*"  (JA-1929, 12/21/06 Objections at 4 (emphasis added).)

During the '427 patent prosecution, GBT requested that the Examiner consider GBT's definition of "preamble" just the same.  GBT requested that the Texas Court's *Markman* and summary judgment orders "be *expressly considered* during the prosecution of this application,"

and expressed disagreement only regarding Hakkinen's disclosure (pages 6-10 of GBT's objections filing), and again did not disavow its definition that a "preamble" is "spread before transmission" as quoted on page 4 of its objections filing. (JA-1758-60, 1/31/07 IDS at 1-3 (emphasis added).)

By submitting its agreed definition of "preamble" and requesting that the Examiner consider it, GBT reconfirmed the meaning it had already made clear in its specification and original '267 prosecution—the preamble is spread before transmission. In both the '267 reexamination and the '427 prosecution, a "special definition of the term is clearly stated in the . . . file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "[S]tatements made during prosecution commit the inventor to a particular meaning of a claim term that is binding during litigation." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.* 222 F.3d 951, 956 (Fed. Cir. 2000), citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997).

GBT argues that merely "listing" materials in an IDS, "without more," is not an "admission of anything by GBT." (D.I. 208/284 at 27, n. 10, citing *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 334 F.3d 1274, 1279 (Fed. Cir. 2003).) But *Abbott* notes only that filing an IDS—"without more," as GBT puts it—does not admit that the cited material is "prior art" or otherwise "material to the patentability" of the claims. *Abbott Labs.*, 334 F.3d at 1279 (discussing requirements to "create prior art by admission"). Here, GBT did not merely provide a third-party reference—it provided GBT's own express definition of the claim term, confirming the meaning GBT had already made clear in its specification and '267 prosecution, and "requested that [it] be expressly considered." Moreover, where GBT needed to explain positions expressed in the submitted materials (regarding Hakkinen), it told the Examiner; it did not

disavow or withdraw its express definition that a "preamble" is spread before transmission. As the Federal Circuit has explained:

> The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention. [GBT's definitions] are part of the prosecution history and form the totality of the public record upon which competitors rely.

*Hockerson-Halberstadt*, 222 F.3d at 956. GBT "cannot now turn its back on the meaning of ['preamble'] which it embraced . . . during the prosecution of the ['267 and '427] patent[s] and during the reexamination proceeding relating to the ['267] patent." *CVI/Beta Ventures*, 112 F.3d at 1159.

### 6. The Claim Language Is Consistent With GBT's Prior Definition that the Preamble Is Spread Before Transmission.

GBT's prior definition of "preamble" is fully consistent with the claim language. All of GBT's currently asserted claims recite a "preamble" or "access preamble," just like the claims GBT asserted in Texas. All of the asserted claims also include additional language specifying the "spread" nature of the claimed preamble transmissions:

- Claims 27, 29, 42, 44, 51, 52, 59, and 60 of the '267 patent expressly recite "spreading an access preamble."

- Claims 50 and 58 of the '267 patent similarly recite "transmitting a preamble…from the RS-spread-spectrum transmitter."

- Claim 9 of the '427 patent recites a "spread spectrum transmitter" and a "product device" that is "coupled to an output of the spreading sequence generator and coupled to receive an access preamble." *See* '427 Claim 9. The claimed arrangement is like that shown in the patents' Figure 4—the preamble and a spreading sequence are both input into the same product device, so that the output (product) of the product device will include a *spread* preamble.

- Claim 10 of the '427 patent recites "a *spread-spectrum transmitter …* transmitting an access-burst signal … each segment comprising a selected access preamble."

- Claims 14 of the '427 patent, and its dependent claims, recite a "sending data from a remote station . . . in a *spread-spectrum* wireless communication network," including transmission of an "access preamble."
- Claim 26 of the '427 patent and its dependent claims recite a "remote station" including a "a *spread-spectrum transmitter*" to transmit an "access preamble."

GBT incorrectly argues that its prior construction would (1) render claim language superfluous or ambiguous in the claims that expressly recite a step or function of "spreading an access preamble," or (2) "impermissibly inject a 'spreading' step that does not otherwise exist" in the claims that do not expressly recite the step or function of spreading the preamble. (D.I. 208/284 at 21-22.) But GBT ignores that <u>this same claim language was at issue in the Texas case</u>. Claims 27 and 29 of the '267 patent, asserted in Texas, recite "spreading an access preamble," and are the claims from which currently-asserted claims 51 and 52 depend. Original '267 patent claims 13 and 23-26, asserted in Texas, do not recite a step of spreading the preamble.

GBT further points to '427 claims 14, 16, 18, and 20 (D.I. 208/284 at 22), but these claims are fully consistent with GBT's prior construction. GBT argues that its prior construction would "include 'spreading' in claims 14 and 18" where "spreading" is not expressly recited, while claims 16 and 20 expressly recite "spreading." But GBT fails to distinguish (1) the preamble, from (2) recited steps or functions performed upon the preamble. The claimed preamble, as GBT taught in the specification and defined during prosecution, is a signal used for communicating with a base station that is spread before transmission. Some claims, such as '267 claims 27 and 29 and '427 claims 16 and 18, recite further steps or functions to be performed on a preamble or preamble code (such as "spreading" or "transmitting" the preamble). Other claims, such as '267 claims 13 and 23-26 and '427 claims 14 and 18, do not recite such additional steps, and GBT's definition that a preamble is a signal that is "spread before

transmission" does <u>not</u> "introduce a 'spreading' step" into those claims as GBT argues. GBT merely chose to direct its various claim elements to various different aspects of the system or process—the "thing" (the preamble), and various steps or functions that one or more entities may perform on that thing (transmitting, spreading, etc.).

### 7. The Court Should Reject GBT's "Message Data" Limitation.

To the extent the Court finds GBT is not estopped from challenging the Texas court's definition of "preamble" and did not define the term during the '267 reexamination and '427 file history, it should reject GBT's attempt to rewrite the definition.

GBT now argues that the preamble is a signal "without message data." (D.I. 208/284 at 10-17.) GBT's proposal is at odds with its prior construction in the present case against Apple and Motorola, where GBT in August 2011 proposed that a "preamble" means a "signal used during the access procedure to facilitate establishing a communication link between a base station and a remote station." (JA-1953, 1955.) And GBT fails to inform the Court that the Texas court correctly rejected this same argument:

> While the Court recognizes that the '267 patent teaches the sending of a "message" or "packet data" or a "signal having data" in response to an acknowledgment, *the question is whether the claims preclude the sending of something in addition to the preamble*. As noted in the [Magistrate Judge's] report, the asserted claims use the term "comprising," which is "inclusive or open-ended and does not exclude additional, unrecited elements or method steps." *See CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005). Plaintiff does not cite the Court to anywhere in the specification or the claims that discuss the importance of sending a preamble alone. Several drawings in the patent, Figures 6, 7, 9A, and 9B, show the transmission of preambles plus something else – pilot signals. The specification discusses the use of pilot signals:
>
> > Fig. 6 illustratively shows the common-packet channel access burst format, for each access-burst signal. Each access-burst signal has a plurality of segments. Each segment has a preamble followed by a pilot signal. . . .
>
> Col. 5, Line 59-col. 6, Line 29; col. 7, Line 47-Line 57. . . .
>
> Plaintiff now appears to be attempting to alter the definition of preamble to exclude data sent within or in conjunction with the preamble. The Court declines to alter the agreed construction by finding that data may not be included within or in conjunction with the

preamble.

(JA-1921-22 (emphasis added).)

GBT argues that its new construction results from the '267 reexamination file history (D.I. 208/284 at 10-12), but as explained above, GBT expressly defined the term "preamble" during that prosecution. The reexamination discussion that GBT now points to (D.I. 208/284 at 10-12) did not disclaim the meaning of "preamble" itself. GBT did not distinguish IS-95 on the basis that it did not disclose a "preamble" under the proper meaning of "preamble." GBT admitted that in IS-95, "each access probe is a preamble plus a message," and IS-95 "teaches sending the preamble and a message together." (JA-784, JA-780-82.) GBT instead argued that IS-95 was distinct based on the <u>separate limitations</u> in claims 24, 26, and other claims regarding the <u>timing</u> of sending "data"—elements reciting that "upon [receiving or detecting] an acknowledgement," then the remote station transmits "data." (*Id.*) GBT argued that in its claims, "the message is not sent with the preamble, but in response to the acknowledgment," "[t]he message is sent *after* the acknowledgment is received," and the like. (JA-780-82, JA-1196.) None of these statements clearly and unambiguously disclaimed the meaning of "preamble," which GBT had already expressly defined. These statements addressed only separately recited claim elements, not the term "preamble" itself, just as GBT's brief does (and so did Apple's cited interrogatory response). (*See* D.I. 208/284 at 14 (discussing claim limitations that "when" an acknowledgement is received, then packet data is transmitted), JA-1873.)

To be clear, Defendants do not dispute that the preamble, properly construed as a "signal used to communicate with the base station that is spread before transmission," would not be understood to <u>contain</u> the type of message data the patents contemplate. (*Cf.* D.I. 208/284 at 13, quoting Apple expert Dr. Kakaes: "the preambles . . . do not *include* the message or data," "the

preamble does not *include* a message" (emphasis added).)  But nothing in the meaning of the term "preamble" excludes or prohibits "message data" (or anything else) from being transmitted before or after the preamble, as the Texas court correctly determined.

> **8.  The Court Should Reject GBT's Attempt to Inject the Limitation of "Codes Used to Distinguish One Preamble from Another."**

In a further departure from its prior positions, GBT now argues that a preamble must include "one or more codes that distinguish one access preamble/preamble from another."  (D.I. 208/284 at 9.)  Again, GBT's stipulated construction in Texas and its August 2011 construction in the present case against Apple and Motorola did not include any such limitation.

The Court should reject GBT's new argument because nothing in the intrinsic or extrinsic evidence requires that a preamble must include "one or more codes that distinguish one access preamble/preamble from another."  GBT first cites the '267 prosecution history (D.I. 208/284 at 15-16), but GBT quotes only a tiny snippet from the file history, omitting the full context:

> Another disclosed distinction is that ***the access preamble*** here is itself a form of code data (e.g. a signature) that ***is spread in essentially the same manner as other data***.  For example, Fig. 4 shows ***spreading of the preamble*** (see also p. 9, lines 12-20); and Fig. 3 shows the matched filter 315 de-spreading signals before processing for preamble recognition (see also p. 7, lines 15-20).  Within one access burst the preambles may all be the same, or they may differ (see p. 13, lines 5-7).  By comparison, Ozluturk teaches simply transmitting spreading codes without any data carried on the short code or access code transmissions.  ***Transmission of a spreading code*** only is not a transmission of a ***spread access preamble***.

(JA-289, 8/6/02 Applicant's Remarks at 5 (emphasis added).)  GBT is correct that it disclaimed claim scope in this passage, but it misstates the disclaimer.  As discussed above, GBT distinguished Ozluturk on the basis that Ozluturk does not ***spread*** the preamble.  GBT did not distinguish its invention from Ozluturk based on transmission of a "code," much less "one or more codes that distinguish one access preamble/preamble from another."  To the contrary, GBT acknowledged that Ozluturk discloses "transmitting spreading codes."  (*Id.*)

20

GBT also cites the specification (D.I. 208/284 at 16-17), but nothing in the specification requires that the term "preamble" be rewritten to import the limitation that "one or more codes that distinguish one access preamble/preamble from another." To the contrary, the specification teaches that the use of "codes" for the preamble is entirely optional from among "many ways" of generating preambles, and the use of different codes to distinguish between different preambles is also only an optional approach that "can be" employed:

> ***There are many ways of generating preamble waveforms***. One existing way is to use a single orthogonal Gold code per preamble . . .. The preferred approach is to use different codes rather than a single repeating code in generating each preamble. . . . The order of the $A_i$'s ***can be*** chosen so that identical codes are not used in the same locations for two different preambles.

('427 col. 8:1-20 (emphasis added).)

GBT cites a conclusory opinion from an expert report (D.I. 208/284 at 16-17); Apple's expert disagrees and explains that a person of ordinary skill in the art would interpret the claims with the meanings Defendants propose. (JA-1956-2012.)

Finally, GBT ignores that some asserted claims expressly recite "preamble codes." (*See* '427 Patent, claims 16, 20.) When GBT wanted to claim a "preamble code" concept, it did so expressly. There is no basis to inject such a limitation into claims where it is not recited.

## B. "Packet Data"

| Claim language | Plaintiff's Proposed Construction | Defendants' construction |
|---|---|---|
| "packet data" | Data organized into a packet. | Plain meaning. If construction is required, "packet data" is data that is contained in a packet. |

Defendants are not currently aware of any infringement or validity issue that turns on the parties' positions regarding "packet data," and reserve their rights to revisit this issue if needed. Defendants' primary objection to GBT's proposed language is that "packet data" need not necessarily be a <u>complete</u> packet as GBT's construction might imply. By its plain meaning,

"packet data" may be only <u>some</u> of the data contained in a packet. If a packet contains data subsets D1, D2, and D3, any of these subsets is packet data. GBT does not cite anything that requires a narrower meaning, and the specification does not use the terms "packet" and "data" with any special narrow meaning. *See*, *e.g.*, '427 col. 3:10-28, 4:23-44, 7:15-48.

### C.     "Discrete Power Level."

| Claim language | GBT's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "discrete power level" | *GBT's prior proposed construction:* A constant distinct power level.<br><br>*GBT's revised proposed construction:* No construction is required. | A constant distinct power level. |

The term "discrete power level" is recited in all asserted claims. Both in Texas and in the present case against Apple and Motorola, GBT agreed that "discrete power level" means "a constant distinct power level." GBT's prior construction is correct.

### 1.     The Ordinary Meaning of Transmitting "At a Discrete Power Level" is a Constant Distinct Power Level.

The asserted claims recite transmitting one preamble "at a first discrete power level" and transmitting a second preamble "at a second discrete power level higher than the first discrete power level" or "increasing power level to a new discrete power level," or transmitting segments of preambles "having sequentially increasing discrete power levels." (*See* '267 claims 42-44, 50-52, 58-60; '427 claims 9, 10, 14-22, 24, 26-28.) One preamble is sent "at" a certain discrete power "level," and a next preamble is sent "at" a higher discrete power "level." The plain meaning is that the first preamble is sent "at" a constant power level (e.g., power level = 1) and the next preamble is sent "at" a different constant power level (e.g., power level = 2).

### 2.     The Specification Describes Preambles Transmitted At Constant Distinct Power Levels.

The '267/'427 specification confirms the ordinary meaning, teaching that the power level

of each preamble is "constant" and distinct. In the disclosed embodiment, each successive preamble is transmitted at a different power level such as $P_0$, $P_1$, and $P_2$. "The transmitted power during each preamble is constant." ('427 Col 7:32-33.) Figure 6 shows the flat, constant power level during each preamble, which is distinct from the power level of the next preamble:

> FIG. 6 illustratively shows the common-packet channel access burst format, for each access-burst signal. [A] first segment has a first preamble and pilot, at a ***first power level $P_0$***. A second segment has a second preamble and a second pilot, at a ***second power level $P_1$***. The third segment has a third preamble and a third pilot at a ***third power level $P_2$***. . . .
>
> The structure of the access burst is shown in FIG. 6. . . . ***The transmitted power during each preamble is constant***.



FIG 6

('267 col. 5:59-6:10; col. 7:47-52 and Figure 6.)

Defendants acknowledge the claims are not always limited to a disclosed embodiment, and do not seek to "import" limitations into the claims as GBT argues (*cf*. D.I. 208/284 at 24-25). The reason GBT previously agreed, and Defendants propose, that "discrete power level" is a "constant distinct power level" is that GBT confirmed this plain meaning during prosecution.

### 3. During Prosecution, GBT Confirmed That Each Preamble "Power Level" is Constant.

During prosecution of the original '267 patent ("upstream" from all asserted claims), GBT made clear that transmitted at a <u>constant power level</u>.

GBT's original March 22, 1999 patent application did not include any claim limitations reciting the power of transmitted preambles. (JA-56-92.) In a May 6, 2002 Amendment, GBT added application claims 43-49 (different from current claims 43-49), each reciting transmitting a first preamble "at a first power level" and transmitting a second preamble "at a second power level [that is] higher than the first power level" (claims 43, 47-49) or "transmitting a preamble at a set power level" and "increasing power level to a new set power level, and repeating the transmitting step" (claims 44-46). (JA-218-220, 5/6/02 Amendment at 4-6.)

The Examiner rejected claims 43-48 as obvious or anticipated in view of Ozluturk. (JA-234-235, 6/5/02 Office Action at 2-3.) In response, GBT maintained its claims, including claim 43, and distinguished its claimed preamble power level from Ozluturk as follows:

> There are several features of the access methodology disclosed in this case that distinguish over the Ozluturk Patent, which are specified in different ones of the claims (47-49) that are still at issue in this case. For example, as disclosed in this case, each preamble transmission is at a discretely different power level. Application Fig. 6, shows examples of preamble transmissions at discretely different power levels $P_0$ through $P_3$. . . . By comparison, Ozluturk teaches continuously repeating transmissions and a linear continuous power ramp-up. Continuous transmission and ramp-up does not provide **_preambles, each of which is <u>completely at</u> one of the <u>different</u> <u>levels</u>_**, or separations between preamble transmissions. . . .
>
> Independent claims 43 and 44 specify **_<u>transmission of each preamble at one "level." Stated another way, the entire first preamble transmission is at a one "first power level," and the entire second preamble transmission is at a one "second power level"</u>_** (see e.g. claim 43, lines 10-15). . . . A continuous ramp-up extending through a preamble transmission, as in Ozluturk, would result in **_a preamble transmission that continues to increase (e.g. in an inclined linear manner) during the respective preamble transmission, not <u>a complete transmission of a preamble at either "level," as claimed</u>_**. Attention is directed to Figs. 5 and 7 of the Ozluturk Patent. **_The express claim language therefore excludes continuous power ramp up through one or more preamble transmissions, e.g. as a continuously increasing signal during each ongoing spreading_**

***code transmission***, as is apparently the case in the Ozluturk system. . . .

> Dependent claim 45 should be patentable for similar reasons, since the modification proposed in the obviousness (103) rejection over Ozluturk, does not provide either the respective ***power "level" transmissions*** or the period "after" a preamble transmission . . ..

(JA-289-291, 8/6/02 Amendment at 5-7 (emphasis added).)

GBT's arguments distinguishing Ozluturk confirmed that GBT's claimed preambles are transmitted at a constant power "level" just like the preambles disclosed in the specification. GBT made clear that when its claims recite a preamble transmitted at one power "level," the preamble power is "***completely at***" that level, through the "***entire***" preamble, in contrast with Ozluturk where the power "continues to increase … during the respective preamble transmission," with a "continuously increasing signal during each …transmission." Where the claims recite a first power "level" and a second power "level," the claims require "a ***complete*** transmission of a preamble ***at either 'level,' as claimed***." GBT's claims reciting a preamble transmitted at a power "level" therefore require a <u>constant</u> power throughout the preamble.

GBT accordingly agreed in its Texas case that "discrete power level" means a "constant distinct power level." GBT submitted the agreed construction with its opening *Markman* brief:

| 3. | [at] a [first] [second] discrete power level | A [first, second] constant distinct power level.[2] |

(JA-2042 ("This is Defendants' proposed construction which Plaintiff hereby agrees to.")) GBT proposed the same construction in August 2011 in the present case against Apple and Motorola:

| "discrete power level" | | A constant distinct power level. |

(JA-1955.)

GBT now argues that although it agreed to the correct construction in its opening brief in Texas, it allegedly "retracted" the agreement in its reply brief. (D.I. 208/284 at 25-26.) This assertion is both incorrect and irrelevant. GBT's Texas reply brief did not retract its agreed

construction; the brief did not address this term, like any reply brief typically does not address undisputed issues.  (JA-2050-58.)  Nor did the Texas court determine that the term "discrete power level" should not be construed.  As shown in the *Markman* order, the term was not presented as a dispute for the court to decide.  (JA-1901-1918.)  In any event, it is irrelevant whether GBT "retracted" its agreement in Texas, because the intrinsic evidence requires the construction that Defendants propose and that GBT itself proposed in August 2011.

GBT further tries to back away from its prior position by arguing that during prosecution it did not "use the word 'constant.'"  (D.I. 208/284 24.)  But the word "constant" comes from GBT's specification, which describes that "[t]he transmitted power during each preamble is constant" as noted above.  GBT explained during prosecution that transmitting each preamble power "level" requires the "entire" preamble to have a power "completely at" a certain "level," throughout the "complete" preamble—in other words, the preamble power is constant.  The construction of "discrete power level" could therefore be re-worded synonymously using GBT's own words from prosecution, such as "a distinct power level that is completely at one power level throughout the complete transmission of the entire preamble."  However, the construction of a "constant distinct power level" will be straightforward for jurors to understand and apply.

### 4. GBT Confirmed During Prosecution that "Discrete" Power Levels Are Distinct Power Levels.

GBT apparently does not dispute that each "discrete power level" must be "distinct" in that it is different, separate, and not overlapping.  (D.I. 208/284 at 23-24.)  GBT confirmed this meaning during the original '267 prosecution after amending pending claims 47 and 49:

> Claims 47 and 49 have been amended to more clearly point out certain distinctions over the art. Specifically, claims 47 and 49 expressly require that the *power levels* of the preamble transmissions are *discretely different*. . . . As noted, Ozluturk uses a continuous ramp-up instead of discrete power levels.

(JA-289-291, 8/6/02 Amendment at 5-7 (emphasis added).)

After arguing that each preamble power "level" is constant as discussed above, GBT further amended claims 43, 44, and 46 to specify each preamble is transmitted at a "discrete" power level. (JA-309-310, 315-317, 12/30/02 Amendment at 2-3, 8-10.) GBT then argued:

> A continuous power ramp-up as in the Ozluturk patent does not provide two preamble transmissions at two *different discrete* power levels, where the second discrete power level is higher than the first discrete power level. . . . Since the continuous power ramp-up of Ozluturk does not meet the *requirements for "discrete" different power levels* specified in independent claims 43 and 44, that Patent does not anticipate either of those claims or dependent claim 46.

(JA-313, 12/30/02 Amendment at 6 (emphasis added).) GBT's arguments made clear that in addition to the constant power "level" it had previously defined during prosecution, each claimed "discrete power level" is "different" (distinct) from each other recited discrete power level.

### 5. GBT Submitted Its Agreed Construction of "Constant Distinct Power Level" During the '267 Reexamination.

As a final confirmation that a discrete power level means a constant distinct power level, GBT submitted its agreed construction of the term (its Texas opening *Markman* brief) during the '267 reexamination. (JA-25.) Again, GBT did not attempt to disavow its express definition.

### D. Transmitting "If No Acknowledgement Is Detected/Received."

| Claim language | GBT's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "If no [acknowledgment / layer one acknowledgement] corresponding to the access preamble is detected, transmitting a spread access preamble from the MS transmitter at a second discrete power level higher than the first discrete power level" | *GBT's prior proposed construction:* No construction required.<br><br>*GBT's revised proposed construction:* If no [acknowledgement/layer one acknowledgement] signal from a base station corresponding to the access preamble is detected by the MS <u>within a set time following transmission of the first access preamble</u>, then transmitting a spread access preamble from the MS transmitter at a second discrete power level that is higher than the first discrete power level. | No construction required. |
| "transmitting a spread access preamble at a | *GBT's prior proposed construction:* No construction required. | No construction required. |

| Claim language | GBT's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| successively higher power if no layer one acknowledgement corresponding to any of the preamble transmissions is received" | *GBT's revised proposed construction:* Transmitting a spread access preamble at a successively higher power if no layer one acknowledgement corresponding to any of the preamble transmissions is received from a base station <u>within a set time following transmission of an access preamble</u>. | |

These phrases recite the concept that if no acknowledgement is received after a first preamble is transmitted, a second or successive preamble is transmitted. Earlier in this case, GBT did not propose that these phrases needed any construction. (JA-1953-55.) GBT now seeks to add in the limitation that a preamble is transmitted "within a set time following transmission" of the first transmission. (D.I. 208/284 at 28-30.)

GBT's new position is unsupported and unclear. The claim language at issue does not recite transmitting "within a set time" after transmission of a first preamble, transmitting preambles "at selected spacing/intervals," or the like. By contrast, other claims recite the concept that GBT apparently seeks to import. Original '267 patent claim 24 and '267 reexamination claims 50 and 58 (both asserted in these cases) recite steps including:

> if an acknowledgment is not received, <u>upon expiration of a predetermined interval, following the transmission of the preamble</u>, increasing power level to a new discrete power level, and repeating the transmitting step and continuing the listening step.

('267 original claim 24; '267 reexamination claims 50 and 58.) GBT does not explain whether it intends "within a set time" to be synonymous with "upon expiration of a predetermined interval" or have some other meaning. Its proposal is vague and ambiguous.

GBT asserts that its "within a set time" rewrite is "dictated by the prosecution history" because it "argued during prosecution of the '267 patent application that this limitation means 'the mobile station transmits a preamble at selected spacing/intervals.'" (D.I. 208/284 at 28.)

But GBT did not argue that "this limitation" has the meaning GBT now argues. GBT quotes a snippet of the file history out of context. The full cited passage follows:

> Applicants respectfully submit that the combination of references does not fairly suggest the subject matter of new claims 43-50. The ***disclosed*** random access technique includes an access phase in which a mobile station transmits a preamble and listens for a corresponding acknowledgement. The mobile station will repeat this operation at an increased power level, if it does not detect the acknowledgement corresponding to its transmitted preamble. The process continues at successively higher power levels until the base station receives and detects a preamble and sends back the corresponding acknowledgement or until the mobile station reaches some maximum number of repetitions of the preamble transmission. In this manner, the mobile station transmits a preamble at selected spacing/intervals, with each successive transmission stepped to a higher transmit-power level, and it ceases preamble transmission in order to send data upon receipt of a corresponding acknowledgement. Attention is directed to Figs. 6 and 7 and to page 16 lines 8-11, and page 17, line 13 to page 18, line 5. The applied prior patents do not fairly suggest such an access phase; and as described below, ***the new claims have been drafted to specify in various forms one or more distinguishing aspects of this disclosed inventive random access technique***.

(JA-223 (emphasis added).) GBT then proceeded to distinguish each claim on one or more grounds. (*See* JA-223-227.) GBT distinguished <u>one</u> claim, pending claim 44, on the basis of "spacing/intervals," because that claim expressly recited steps of "listening for an acknowledgement" after transmission of the first preamble and "if an acknowledgement is not received <u>upon expiration of a predetermined interval</u>, increasing power . . . and repeating the transmitting step." (JA-219.) GBT thus distinguished claim 44 from the prior art as follows:

> Claim 44 specifies the preamble transmissions and response to the acknowledgement, albeit *from a somewhat different perspective*. In this independent claim, a remote station transmits a preamble at a set power level and listens for a corresponding acknowledgment. *These steps repeat if the acknowledgment is not received within a predetermined interval*. . . . [In the prior art,] . . . there is no transmission of a second preamble at a power higher than the power level of the first preamble transmission *in the event that an acknowledgement is not received within a defined interval*.

(JA-225 (emphasis added).) Far from importing the "within a predetermined interval" limitation into claims where it is not recited (as GBT now argues), GBT explained that the "within a predetermined interval" limitation in this one claim was "different" from the other claims.

GBT also quotes from the same office action response in which GBT stated that if no acknowledgement is detected, "then" the mobile station transmits a second preamble. (D.I. 208/284 at 28, quoting JA-226.) But GBT was merely summarizing the language of pending claim 49—if no acknowledgement is detected, then the mobile station subsequently transmits a second preamble. (*See* JA-226 (summarizing claim 49); JA-220-221 (claim 49).)

GBT also cites a passage from the '267 reexamination discussing that the remote station "transmits the preamble and then listens for the acknowledgement." (D.I. 208/284 at 28, quoting JA-783.) The cited passage does not require the preamble transmission to be "within a set time" or the like. To the contrary, it paraphrases the claim language—"[i]f the remote station does not detect an acknowledgement, it re-transmits the preamble at a higher power level"—without suggesting or imposing any requirement that the preamble is re-transmitted "within a set time." (JA-783; *see also* JA-1201 (similar argument without any "within a set time" requirement).)

GBT cites an Apple interrogatory answer, but that answer merely quotes from the file history and does not rewrite or add any limitations into the claims. (D.I. 208/284 at 29.)

GBT next argues that the claim language "necessarily requires a *set* time between preamble transmissions during which the MS may detect a layer one acknowledgement." (D.I. 208/284 at 29.) But the cited claim language does not recite re-transmitting a preamble "within a set time" after a transmission, in contrast with the other claims that recite preamble re-transmission "upon expiration of a predetermined interval."

GBT finally cites an exemplary embodiment and Figure 6 in the specification (D.I. 208/284 at 29-30), but the specification does not define the invention to require transmission of a successive preamble "within a set time" after transmission of a first preamble.

## V.     CONCLUSION

For the foregoing reasons, Defendants' proposed claim constructions should be adopted.

Respectfully submitted,

OF COUNSEL:

Timothy S. Teter
Lowell D. Mead
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel: (650) 843-5000

POTTER ANDERSON & CORROON LLP

By:  /s/ Richard L. Horwitz
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       1313 N. Market Street
       Hercules Plaza, 6th Floor
       Wilmington, DE 19899-0951
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Attorneys for Defendant Apple Inc.*

OF COUNSEL:

Robert T. Cruzen
Kristen L. Reichenbach
Todd M. Siegel
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
Tel: (503) 595-5300

POTTER ANDERSON & CORROON LLP

By:  /s/ Richard L. Horwitz
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       1313 N. Market Street
       Hercules Plaza, 6th Floor
       Wilmington, DE 19899-0951
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

OF COUNSEL:

James W. Morando
Matthew A. Hollander
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 954-4400

RICHARDS, LAYTON & FINGER, PA

By:  /s/ Jaclyn C. Levy
       Steven J. Fineman (#4025)
       Jaclyn C. Levy (#5631)
       One Rodney Square
       920 N. King St.
       Wilmington, DE 19801
       Tel: (302) 651−7700
       fineman@rlf.com
       levy@rlf.com

*Attorneys for Defendant Dell, Inc.*

OF COUNSEL:                              POTTER ANDERSON & CORROON LLP

Fred I. Williams                         By: */s/ Philip A. Rovner*
AKIN GUMP STRAUSS HAUER &                    Philip A. Rovner (#3215)
FELD LLP                                     Jonathan A. Choa (#5319)
300 West 6th Street, Suite 1900              1313 N. Market Street
Austin, TX 78701                             Hercules Plaza, 6th Floor
Tel:  (512) 499-6200                         Wilmington, DE 19899-0951
                                             Tel:  (302) 984-6000
Eric J. Klein                                provner@potteranderson.com
AKIN GUMP STRAUSS HAUER &                    jchoa@potteranderson.com
FELD LLP
1700 Pacific Avenue, Suite 4100          *Attorneys for Defendant*
Dallas, TX 75201                         *Lenovo (United States) Inc.*
Tel:  (214) 969-2800

John Wittenzellner
AKIN GUMP STRAUSS HAUER &
FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
Tel:  (215) 965-1200


OF COUNSEL:                              MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Mitchell G. Stockwell                    By:  */s/ Jack Blumenfeld*
Vanessa M. Blake                             Jack Blumenfeld (#1014)
K. James Sangston                            1201 N. Market St.
KILPATRICK TOWNSEND                          P.O. Box 1347
& STOCKTON, LLP                              Wilmington, DE 19899
1100 Peachtree Street, Suite 2800            Tel:  (302) 658-9200
Atlanta, GA 30309                            jblumenfeld@mnat.com
Tel:  (404) 815.6500

                                         *Attorneys for Defendant, Motorola Mobility, Inc.*

OF COUNSEL:

John H. McDowell, Jr.
Benjamin J. Setnick
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX  75201
Tel:  (214) 659-4400

James V. Mahon
ANDREWS KURTH LLP
4819 Emperor Blvd., Suite 400
Durham, NC  27703
Tel:  (919) 599-2639

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By:  */s/ Rodger D. Smith*
    Rodger D. Smith II (#3778)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE  19899
    (302) 658-9200
    rsmith@mnat.com

*Attorneys for Defendant Sony Ericsson Mobile*
*Communications (USA) Inc.*

PARKOWSKI , GUERKE & SWAYZE, P.A.

By:  */s/ John C. Andrade*
    John C. Andrade (# 1037)
    Michael W. Arrington (# 3603)
    116 West Water Street
    P.O. Box 598
    Dover, DE 19903
    Tel:  (302) 678−3262
    jandrade@pgslegal.com
    marrington@pgslegal.com

*Attorneys for Defendants, Pantech Corp. (formerly*
*known as Pantech Co. Ltd.) and Pantech Wireless*
*Inc.*

FISH & RICHARDSON P.C.

By:  */s/ Thomas Lee Halkowski*
    Thomas Lee Halkowski (No. 4099)
    222 Delaware Avenue, 17th Floor
    P.O. Box 1114
    Wilmington, DE  19801
    Tel:  (302) 652-5070
    halkowski@fr.com

*Attorneys for Defendants*
*LG Electronics, Inc. and LG Electronics*
*Mobilcomm USA, Inc*

OF COUNSEL:                                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Stephen S. Korniczky                             By:  */s/ Thomas C. Grimm*
Martin R. Bader                                       Thomas C. Grimm (#1098)
Graham M. Buccigross                                 1201 N. Market Street
SHEPPARD MULLIN RICHTER                              P.O. Box 1347
  & HAMPTON LLP                                      Wilmington, DE  19899-1347
12275 El Camino Real, Suite 200                      Tel:  (302) 658-9200
San Diego, CA  92130                                 tgrimm@mnat.com
Tel:  (858) 720-8900

                                                 *Attorneys for Defendants HTC Corporation, HTC*
                                                 *(B.V.I.) Corporation, HTC America,*
                                                 *Inc., and Exedea, Inc.*


OF COUNSEL:                                      POTTER ANDERSON & CORROON LLP

Robert T. Haslam                                 By:  */s/  Richard L. Horwitz*
COVINGTON & BURLING LLP                              Richard L. Horwitz (#2246)
333 Twin Dolphin Drive, Suite 700                    David E. Moore (#3983)
Redwood City, CA 94605                               1313 N. Market Street
Tel:  (650) 632-4700                                 Hercules Plaza, 6th Floor
                                                     Wilmington, DE  19899-0951
Michael M. Markman                                   Tel:  (302) 984-6000
Leslie N. Harvey                                     rhorwitz@potteranderson.com
Robert J. Williams                                   dmoore@potteranderson.com
COVINGTON & BURLING LLP
One Front Street, Floor 35                        *Attorneys for Defendants/Counterclaimants*
San Francisco, CA 94111                          *Hewlett-Packard Company and Palm, Inc.*
Tel:  (415) 591-6000


Dated:  November 9, 2012

1082537/35716

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 9, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on November 9, 2012, the attached document was electronically mailed to the following person(s)

Michael Kelly
Thomas A. Stevens
Daniel M. Silver
Eric E. Grondahl
Mark D. Giarratana
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
mkelly@mccarter.com
thstevens@mccarter.com
dsilver@mccarter.com
egrondahl@mccarter.com
mgiarratana@mccarter.com
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

Marvin A. Miller
Miller Law LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
mmiller@millerlawllc.com
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

Stephen A. Saltzburg
George Washington University Law School
2000 H Street, NW
Washington, DC 20052
ssaltz@law.gwu.edu
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

Mark D. Giarrantana
Eric E. Grondahl
McCarter & English, LLP
City Place I
185 Asylum Street
Hartford, CT 06103
mgiarrantana@mccarter.com
egrondahl@mccarter.com
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

/s/ David E. Moore
_____

Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

1082578/(35716/36619)