IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 10-428-SLR |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| APPLE INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF GOLDEN BRIDGE TECHNOLOGY, INC.'S
REPLY CLAIM CONSTRUCTION BRIEF**


McCARTER & ENGLISH, LLP

Michael P. Kelly (# 2295)
Daniel M. Silver (# 4758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
*mkelly@mccarter.com*
*dsilver@mccarter.com*


Mark D. Giarratana
Eric E. Grondahl
CityPlace I
185 Asylum Street
Hartford, CT 06103
(860) 275-6700
*mgiarratana@mccarter.com*
*egrondahl@mccarter.com*

*Attorneys for Golden Bridge Technology,
Inc.*


KLEHR HARRISON HARVEY
BRANZBURG LLP

David S. Eagle (#3387)
Sean M. Brennecke (#4686)
919 Market Street, St. 1000
Wilmington, DE 19801
(302) 552-5518
*deagle@klehr.com*
*sbrennecke@klehr.com*


*Attorneys for Golden Bridge Technology,
Inc. with respect to claims asserted against
Amazon.com, Inc., Hewlett-Packard
Company and Palm, Inc.*


Dated: November 19, 2012

## TABLE OF CONTENTS

Page

I.     ARGUMENT.................................................................................................................1

    A.     This Court is Not Collaterally Estopped From Properly Construing the "Access Preamble/Preamble" Limitation. ..............................................................1

    B.     GBT's Provision of the Texas *Markman* Order to the PTO in an Information Disclosure Statement Is Irrelevant to Claim Construction in this Action.....................................................................................................3

    C.     "Access Preamble/Preamble" ........................................................................5

        1.     "Spreading" is Only Required Where the Claims Call for It, as Evidenced By the Plain Language of the Claims and File History. ..............5

        2.     During Prosecution, GBT Clearly Limited the "Access Preamble/Preamble" To A Signal Without Message Data...........................7

        3.     "Access Preamble/Preamble" is Properly Construed to Include "One or More Codes that Distinguish One Access Preamble/Preamble from Another" ...............................................................8

    D.     "Packet data" is Properly Construed as "Data Organized Into a Packet"..............11

    E.     Defendants Attempt to Distort the Plain Meaning of "Discrete Power Level" and Propose a Definition Contrary to the Intrinsic Evidence. ...................11

    F.     Transmitting if No Acknowledgement is Detected/Received ..............................14

II.    CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*,
674 F.3d 1365 (Fed. Cir. 2012)......................................................................................9

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
657 F.3d 1264 (Fed. Cir. 2011)....................................................................................10

*In re Amer. Acad. of Sci. Tech Ctr.*,
367 F.3d 1359 (Fed. Cir. 2004)......................................................................................4

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
632 F.3d 1246 (Fed. Cir. 2011)....................................................................................12

*Beery v. Thomson Consumer Elecs, Inc.*,
No. 3:00cv327, 2004 WL 1945316 (S.D. Ohio Aug. 18, 2004)..................................2

*Biovail Labs Int'l SRL v. Intelgenx Corp.*,
C.A. No. 09-605-LPS, 2010 WL 5625746 (D. Del. Dec. 27, 2010)...........................2

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002).......................................................................................7

*Comaper Corp. v. Antec, Inc.*,
596 F.3d 1343 (Fed. Cir. 2010)....................................................................................14

*Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*,
C.A. No. 07-2768, 2011 WL 941870 (E.D. Pa. Mar. 17, 2011)..................................1

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006)..............................................................................10, 11

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
No. 2:05cv151, 2007 WL 294176 (E.D. Tex. Jan. 29, 2007)..................................3, 8

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004).....................................................................................5

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008)....................................................................................14

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
222 F. 3d 951 (Fed. Cir. 2000).............................................................................4, 5, 6

*Mallinckrodt, Inc. v. Masimo Corp.*,
254 F. Supp. 2d 1140 (C.D. Cal. 2003) ..................................................................2

*Pall Corp. v. Hemasure, Inc.*,
181 F.3d 1305 (Fed. Cir. 1999)...........................................................................11

*Phillips* v. *AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ............................................................11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
No. 08-309, 2009 WL 4928029 (D. Del. Dec. 18, 2009) .........................................2

*Starhome GBMH v. AT&T Mobility, LLC,*
C.A. No. 10-434-GMS, Order at 2 (D. Del. Apr. 12, 2012)...................................11

*Textron Innovations Inc. v. American Eurocopter Corp.*,
No. 2011-1309, 2012 WL 3871717 (Fed. Cir. Sept. 7, 2012) ...................................7

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F. 3d 1576 (Fed. Cir. 1996)........................................................................4, 5

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,*
239 F.3d 1225 (Fed. Cir. 2001)..........................................................................10

**REGULATIONS**

37 C.F.R. § 1.56(b) ..............................................................................................4

37 C.F.R. § 1.97(h) ..............................................................................................4

**OTHER**

Manual of Patent Examining Procedure § 609.05(b)
(8th ed., Rev. 9, Aug. 2012)..........................................................................4

## I.   ARGUMENT[1]

### A.   This Court is Not Collaterally Estopped From Properly Construing the "Access Preamble/Preamble" Limitation

Defendants argue that "identical" claim construction issues were litigated in Texas. But the Texas litigation involved different patents, claims and prosecution histories, all of which necessarily create different claim construction issues. The '267 reexamination dictates a construction of "access preamble/preamble" to be without message data.  However, that prosecution history did not yet exist, and therefore could not be considered by the Texas court. In the Texas litigation, asserted claims explicitly recited that the preamble was spread before transmission. But in this case, several asserted claims do <u>not</u> recite spreading the preamble at all. Moreover, the limitation of "spreading the preamble code" is first introduced in claims that depend from these claims. Thus, Defendants' proposed construction would not only violate the rule against reading limitations from the specification into the claims, but would violate the doctrine of claim differentiation. (D.I. 208/284 at 21-22).

Claim construction is a matter of law for the court to resolve, and as part of that analysis, the Court must consider the claims, specification, and prosecution history.  (D.I. 208/284 at 8-9). Defendants ask the Court to abandon this essential task, and instead simply adopt the prior constructions from the Texas litigation. Defendants suggest this would be appropriate under the guise of "collateral estoppel," but the Texas litigation involved significantly different claim construction issues and therefore collateral estoppel does not apply. *See Cross Atlantic Capital Partners, Inc. v. Facebook, Inc.*, C.A. No. 07-2768, 2011 WL 941870, at *9 (E.D. Pa. Mar. 17,

---

[1] Capitalized terms not defined herein have the same meanings given them in GBT's Opening Claim Construction Brief (cited herein as "D.I. 208/284 at _"). "D.I." references are to C.A. Nos. 10-428-SLR and 11-165-SLR, respectively. GBT disputes much of what is contained in the "Introduction" and "Background" sections of Defendants' Answering Brief (cited herein as "D.I. 210/286 at __"), but declines to respond to those points in further detail at this time.

2011) (stipulated construction from litigation prior to reexamination not binding because "claims construction is a matter of law which the district court has an independent obligation to resolve").

While it is true that this Court applied collateral estoppel in *Biovail Labs Int'l SRL v. Intelgenx Corp.*, C.A. No. 09-605-LPS, 2010 WL 5625746 (D. Del. Dec. 27, 2010), it did so only upon an express finding that the <u>same</u> <u>term</u> within the <u>same</u> <u>claim</u> had previously been construed. *Id.* at \*4. Thus, the Court had before it a truly "identical" issue, which is not the case here. The critical distinctions present in this case (*i.e.*, new claims, additional prosecution history by virtue of a reexamination, and the issuance of a separate (albeit related) asserted patent with a separate set of claims) preclude the application of collateral estoppel, and *Biovail* does not suggest otherwise.

Defendants assert the issues are nonetheless identical because the "specification has not changed," there are no "relevant difference[s]" in the asserted claims, and some of the claims are almost "identical." (D.I. 210/286 at 11-12). Defendants are wrong – additional prosecution history alone precludes the application of collateral estoppel. *See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 08-309, 2009 WL 4928029, at \*16 n.9 (D. Del. Dec. 18, 2009) (no collateral estoppel because of intervening reexamination), *adopted*, 2010 WL 2985537 (D. Del. July 20, 2010). Defendants cannot credibly argue the claim construction issues presented in this case are identical to those presented in the Texas litigation in light of the reexamination, the issuance of new claims, and the issuance of an entirely separate patent. *See id.*; *see also Beery v. Thomson Consumer Elecs, Inc.*, No. 3:00cv327, 2004 WL 1945316, at \*11 (S.D. Ohio Aug. 18, 2004) (no estoppel where asserted claims reissued after prior litigation concluded); *Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp. 2d 1140, 1148-50 (C.D. Cal.

2003) (no estoppel where claim language and prosecution histories differed).

Defendants argue that GBT could have presented the reexamination file history to the Texas court, but this would have been impossible. In the Texas litigation, the parties filed their Joint Claim Construction Statement *before* the PTO even granted the request for reexamination; the parties completed claim construction briefing, the Court held a *Markman* hearing and issued a ruling – all *before* the examiner issued the first office action, so it would have been *impossible* to present the complete reexamination file history during the claim construction phase in the Texas litigation.[2] (*See* JA-2089-92 (Texas litigation docket sheet at DI ## 65, 77, 78, 80, 84, 101); JA-718 (reflecting first office action issued July 25, 2006)).

## B. GBT's Provision of the Texas *Markman* Order to the PTO in an Information Disclosure Statement Is Irrelevant to Claim Construction in this Action

Defendants' argument that GBT is bound by the Texas court's construction of the "access preamble/preamble" limitation by virtue of having complied with its duty to inform the PTO of the prior *Markman* proceedings in an Information Disclosure Statement ("IDS") is baseless. (D.I. 210/286 at 13-16). Defendants are asking this Court to do exactly what the PTO rules governing IDS submissions prohibit, *i.e.*, treat the IDS as an admission by GBT that it "embraced," "confirmed" and "reconfirmed" the Texas court's construction of the "access preamble/preamble" limitation. By regulation, GBT's IDS submission is explicitly deemed to <u>not</u> be an admission that the information submitted is "material," and therefore cannot be an admission that the information in any way refutes or is inconsistent with a position the patentee

---

[2] By the time the Magistrate Judge ruled on summary judgment and the District Judge adopted that ruling, GBT had only responded to a single office action and therefore could not have possibly presented the entire reexamination file history; and moreover, the District Judge declined to consider any evidence not presented to the Magistrate Judge. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, No. 2:05cv151, 2007 WL 294176, *2 n.5 (E.D. Tex. Jan. 29, 2007).

takes in arguing before the PTO. 37 C.F.R. §§ 1.56(b)(2) and 1.97(h).[3] Accordingly, the information submitted with the IDS cannot be used to refute the clear and unambiguous positions taken by GBT during reexamination dictating its proposed construction of the "access preamble/preamble" limitation.

Further, GBT's request that the PTO examiner "expressly consider" the IDS submission was form language that parroted the PTO rules requiring the examiner to consider the information and provide a written record of that consideration. (JA-2115, Manual of Patent Examining Procedure § 609.05(b) (8th ed., Rev. 9, Aug. 2012) ("MPEP") ("Examiners must consider all citations submitted…and their initials when placed adjacent to the considered citations on the list…provides a clear record of which citations have been considered….")).

In addition, the PTO applies a different standard for claim construction than do federal courts, and therefore there is no reason to believe the PTO even considered adopting the Texas court's construction. *See In re Amer. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004) ("We have held that it is error for the Board to 'apply the mode of claim interpretation that is used by courts in litigation….") (citation omitted). The PTO gives claims their broadest reasonable interpretation consistent with the specification. *Id.* at 1364 (citations omitted).

Defendants' reliance on the *Vitronics* and *Hockerson-Halberstadt* cases is misplaced. Neither case stands for the proposition that submitting a *Markman* order or any other information in an IDS can be deemed an admission of that information. To the contrary, in both cases, the patentee itself clearly and deliberately imparted a special definition to a claim term in the

---

[3] 37 C.F.R. § 1.97(h) states: "[t]he filing of an information disclosure statement shall not be construed to be an admission that the information cited in the statement is, or is considered to be, material to patentability as defined in § 1.56(b)." Under 37 C.F.R. § 1.56(b), information is "material" where "It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."

specification (*Vitronics*) or in distinguishing the prior art during prosecution (*Hockerson-Halberstadt*). *See generally Vitronics Corp. v. Conceptronic, Inc.*, 90 F. 3d 1576, 1583-84 (Fed. Cir. 1996); *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F. 3d 951, 956 (Fed. Cir. 2000). During prosecution of the '267 reexamination, GBT unmistakably disclaimed message data from the access preamble limitation. As set forth above, GBT's IDS submission of the Texas *Markman* order cannot be used as an admission to refute any such position taken, and therefore is irrelevant to claim construction.

**C.    "Access Preamble/Preamble"**

**1.    "Spreading" is Only Required Where the Claims Call for It, as Evidenced by the Plain Language of the Claims and File History**

Defendants incorrectly argue that the "claimed preamble...is spread before transmission." (D.I. 210/286 at 17-18). First, it is beyond dispute, and Defendants concede (*id*. at 17), that certain claims explicitly require spreading. (*E.g.*, JA-22 (claims 27-29)). Second, it is beyond dispute that during prosecution, GBT amended certain claims (originally proposed claims 47-49, which issued as '267 patent claims 27-29) to recite "spreading" to overcome the Ozluturk reference.  (JA-284-94). Notably, at least one other claim reciting the claimed "preamble" had already been allowed by the examiner without requiring that the preamble be spread (originally proposed claim 38, which issued as '267 patent claim 18). (JA-21).[4]

Thus, where the prosecution history references "spreading," one of ordinary skill would understand that the discussion pertains only to claims that explicitly recite spreading. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1333 (Fed. Cir. 2004) ("[S]tatements

---

[4] Apple attempts to import a "spreading" requirement into the construction of "preamble/access preamble" because its non-infringement theory is that the access preambles of the accused devices are not spread (JA-1870-73), and for this defense to apply to claims which do not recite spreading, Apple needs spreading to be read into "preamble/access preamble."  Apple's defense is unfounded, as GBT will demonstrate in due course.

about [the prior art's] inability to rotate through 360° were made to distinguish only those claims that explicitly recited a 360° limitation."). There is nothing in the prosecution history to support Defendants' contention that all preambles are spread; each statement in the prosecution history regarding spreading pertains to claims that explicitly recite spreading. Notably, Defendants have not pointed to a single office action, response, or the like in which either GBT or the examiner expressly stated that the claimed "access preamble/preamble" limitation itself required "spreading," because no such prosecution history exists. Thus, Defendants' attempt to point to Figure 4 and the description of it in the specification is an improper attempt to import a limitation from a disclosed embodiment into the access preamble limitation (D.I. 210/286 at 7-9).

Even if GBT had stated that all claims require that preambles be spread, which it did not, such a statement would have been erroneous and insufficient to constitute a disclaimer. The Federal Circuit's explanation of its own precedent is particularly instructive on this point:

> In *Intervet*, the patentee, responding to an office action, amended three claims to include the term 'single administration'…Then, in the remarks accompanying the amendment, the patentee made an unqualified statement that the 'claims are restricted to a single vaccination.'…On appeal, the issue was whether claims without the term 'single administration' nonetheless included that limitation because of the patentee's remarks…This court held that the remarks were clearly erroneous and did not apply to all the claims, but were limited to only those claims that included the term 'single administration.'

*Hockerson-Halberstadt Inc.*, 222 F.3d at 957 (internal citations omitted).

Accordingly, the question of whether a preamble must be spread turns on whether the claim in question separately recites "spreading," and cannot be resolved by imposing a blanket spreading requirement, as Defendants urge. The claim language explicitly calls for spreading where required, and the prosecution history reflects that only claims explicitly reciting spreading require spreading.

Defendants' theory is not resurrected by virtue of the fact that some of the asserted claims contain language that (according to Defendants) contemplates spreading. For example, '427 patent claims 14, 15, 17-19, 21, 22 and 24 simply recite "transmitting … an access preamble" without any recitation of "spreading" the access preamble. The only language Defendants point to as purportedly specifying that the access preamble is "spread" is in the preamble portion of these claims (i.e., the language preceding the transitional phrase "comprising," not the claimed "access preamble"), which states, in pertinent part, as follows: "a spread-spectrum wireless communication network." First, this language makes no mention of spreading the access preamble, let alone whether it is spread before transmission, as required by Defendants' proposed construction. Second, the preamble is not a limitation for several reasons, including the fact that this preamble merely identifies the "purpose or intended use of the invention," leaving the structural elements to the bodies of the claims. *See Textron Innovations Inc. v. American Eurocopter Corp.*, No. 2011-1309, 2012 WL 3871717, at *3 (Fed. Cir. Sept. 7, 2012) ("when a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation") (internal quotations and citation omitted). Further, the preamble part of these claims was never mentioned during prosecution of the '427 patent, let alone relied upon for patentability, and therefore cannot be a limitation for this additional reason. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-10 (Fed. Cir. 2002) (preamble not a limitation unless clear and unmistakable reliance on it during prosecution for patentability).

2. **During Prosecution, GBT Clearly Limited the "Access Preamble/Preamble" To a Signal Without Message Data**

Defendants wrongly argue that GBT's proposed construction is at odds with GBT's arguments in the Texas litigation. (D.I. 210/286 at 18). GBT never agreed in the Texas litigation

that the preamble could include or be transmitted with message data. Defendants cite a portion of the Texas court's summary judgment decision rejecting GBT's argument, but they omit the Court's rationale for rejecting GBT's argument: (1) GBT had not submitted the portion of the original prosecution history that it relied upon as evidence of disavowal of claim scope, and (2) even if it were considered, the original prosecution history was insufficient to establish clear disavowal. *See Golden Bridge Tech.,* 2007 WL 294176, at *2 n.5. Unlike in Texas, the complete prosecution history for the asserted claims is in evidence, and that prosecution history clearly establishes that GBT disavowed the inclusion of message data with the preamble. (JA-781-84; JA-1160; JA-1184; JA-1196).

Defendants assert the disclaimers in the '267 reexamination concerning the "access preamble/preamble limitation" "addressed only separately recited claim elements, not the term 'preamble' itself." (D.I. 210/286 at 19). But this is not correct. Each statement is unambiguously clear that the preamble itself is an access signal without message data. (*See* D.I. 208/284 at 10-12). Moreover, Apple's expert witness agrees that a person of ordinary skill would understand these passages to mean that the preamble limitation itself does not include "message or data." (*Id*. at 12-13).

### 3.  **"Access Preamble/Preamble" is Properly Construed to Include "One or More Codes that Distinguish One Access Preamble/Preamble from Another"**

Defendants assert "nothing in the intrinsic or extrinsic evidence requires that a preamble must include 'one or more codes that distinguish one access preamble/preamble from another.'" (D.I. 210/286 at 20). But Defendants ignore how the prosecution history explicitly defines the "access preamble/preamble" as a form of code data: "Another disclosed distinction is that the access preamble here is itself a form of code data (*e.g.*, a signature) that is spread in essentially the same manner as other data." (JA-289). Defendants agree this passage is a disclaimer, but

argue it applies only to the "spreading" language. However, Defendants ignore that GBT's argument in this passage was made with respect to claims that explicitly recited the "spreading" limitation in addition to the "access preamble" limitation. (JA-289-94). Thus, the arguments concerning "spreading" were made with respect to the "spreading" limitation, and have no impact on the separate and distinct "access preamble" limitation. On the other hand, the statement that the "access preamble here is itself a form of code data (e.g., a signature)" is clearly made with respect to the access preamble limitation to distinguish the prior art, and therefore imparts definition to it. *See Advanced Fiber Techs. (AFT) Trust v. J&L Fiber Servs., Inc.*, 674 F.3d 1365, 1372 (Fed. Cir. 2012) ("In reviewing these sources, if the specification or prosecution history defines a claim term, that definition shall apply even if it differs from the term's ordinary meaning.") (citation and internal quotation omitted).

In addition, the claim language itself requires that the codes distinguish one access preamble from another. All asserted claims require detecting a layer one acknowledgement/acknowledgment corresponding to a transmitted access preamble. Thus, the codes necessarily must distinguish the preambles from each other so that each acknowledgement can, in turn, correspond to a respective transmitted access preamble. This is reinforced by the patent specification which unequivocally explains that the claimed access preamble is formed using distinguishing codes "so that identical codes are not used in the same location for two different preambles." (JA-17, '267 patent at 8:37-39).

Moreover, one of ordinary skill in the art would readily understand that the use of distinguishing codes is a necessity for a wireless communication network, as explained by Apple's expert, Dr. Kakaes, who testified that using different preamble signatures (*i.e.*, codes) allows a base station to distinguish amongst simultaneously transmitted preambles within range

of the base station. (JA-2078, Kakaes Dep. at 58:7-15). Dr. Kakaes also testified that a scrambling code (a second code) is used by the mobile stations to allow the base stations to distinguish which preambles are intended for the specific base station. (*Id.* at 58:16-60:25). In this case, GBT's proposed construction is consistent with, and further supported by, Apple's experts. *See AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1274-75 (Fed. Cir. 2011) (using expert testimony to confirm proper construction based upon intrinsic evidence).

The recitation of "a preamble code" in '427 claims 16 and 20 does not preclude this Court from properly construing the access preamble limitation to include "one or more codes." Dependent claims 16 and 20 further define and limit the preamble code as being "selected from among a plurality of preamble codes allocated to the first base station" and define the first acknowledgement signal as "correspond[ing] to the selected preamble code." *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.,* 239 F.3d 1225, 1233 (Fed. Cir. 2001) (claim differentiation applies only where "there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the <u>only meaningful difference</u> between the two claims.") (emphasis added). Thus, claim differentiation does not preclude properly construing the access preamble limitation to include one or more codes.

Defendants' proposed construction of "access preamble/preamble" is so broad that it reads on virtually any signal that communicates with a base station and is spread before transmission, and therefore renders the limitation nearly meaningless. The Federal Circuit has rejected such attempts to render claim limitations meaningless. *See, e.g., Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1379 (Fed. Cir. 2006) (reversing claim construction where "the district court's construction of 'adjustable' renders that limitation nearly meaningless").

**D.** **"Packet data" is Properly Construed as "Data Organized Into a Packet"[5]**

Defendants' only stated objection to GBT's proposed construction "is that 'packet data' need not necessarily be a <u>complete</u> packet[.]" (D.I. 210/286 at 21, emphasis in original). But GBT's proposed construction does not mention the word "complete." Further, Defendants' discussion concerning a packet containing "data subsets D1, D2 and D3," and whether such packet or subsets would be covered by the limitation, appears to improperly seek construction of the term in light of a particular device to determine infringement. (*Id.* at 21-22). To the extent Defendants request the Court consider the operation of the accused devices in construing the claims, that is improper. *See Pall Corp. v. Hemasure, Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) (construction of claim is independent of device accused of infringement). In any event, it is plain that GBT's proposed construction comports with the understanding of those skilled in the art, as evidenced by the technical dictionary definitions submitted by GBT.[6]

**E.** **Defendants Attempt to Distort the Plain Meaning of "Discrete Power Level" and Propose a Definition Contrary to the Intrinsic Evidence**

The plain and ordinary meaning of "discrete" is "separate, distinct or non-continuous." (D.I. 208/284 at 23). This definition is consistent with the description in the specification and the prosecution history. Defendants ask the Court to commit one of the cardinal sins of claim construction: reading a preferred embodiment into the claim and construing "discrete" to require that the power level be "constant." *See Phillips* v. *AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir.

---

[5] GBT objects to, and requests that the Court decline to consider, Defendants' alternative construction of "packet data," which was disclosed for the first time in the Answering Brief, and is not contained in the Joint Claim Chart (D.I. 193/279). (*See* JA-2080, *Starhome GBMH v. AT&T Mobility, LLC,* C.A. No. 10-434-GMS, Order at 2 n.4 (D. Del. Apr. 12, 2012) (refusing to consider new construction proposed after submission of Amended Joint Claim Chart)).

[6] Defendants claim that no infringement or validity issue turns on the construction of packet data, but most Defendants have not provided their non-infringement or invalidity contentions because claims against them are stayed pending resolution of the Apple litigation. Thus, the construction of "packet data" may be material in the future and warrants construction.

2005) (*en banc*). Defendants rely on the preferred embodiment of the invention shown in Figure 6. While this preferred embodiment shows preambles transmitted at constant power levels, the specification does not state this is a necessary part of the invention, nor that the invention is in any way limited to this single embodiment. Even if the embodiment of Figure 6 were the sole embodiment in the patents-in-suit, which it is not, it would be improper for the Court to read a constant power level from that embodiment into the "discrete power level" limitation absent a clear statement in the specification or prosecution history to that effect. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011). There is nothing in the specification or prosecution history to this effect. To the contrary, claims 8, 13, 31 and 36-38 of the '427 patent recite "constant power levels" rather than "discrete power levels," demonstrating that GBT recognized the difference between "constant power levels" and "discrete power levels," and that when it wanted to claim "constant power levels" rather than "discrete power levels," it did so.

Defendants attempt to buttress their unfounded construction by conflating different arguments for different claim limitations. First, GBT argued that claims reciting "[first/second] discrete power level" "expressly require that the power levels of the preamble transmissions are discretely different." (JA-291; 293-94). The examiner accepted this argument – which is entirely consistent with the plain and ordinary meaning urged by GBT, "separate, distinct or non-continuous" – and allowed the claims to issue.[7] (JA-296).

Second, GBT attempted to overcome a rejection of other claims reciting a "[first/second] power level," and with regard to those claims, argued that each entire preamble was transmitted

---

[7] These claims were 47 and 49 in the '267 patent application, and issued as claims 27 and 29 from which asserted claims 51-52 depend, respectively.

at one "'level'" and that the claims then-currently proposed were distinct from Ozluturk.[8] (JA-290). The examiner maintained his rejection of these claims despite this argument. (JA-296). GBT then <u>amended</u> the claims at issue to recite the terms "[first/second] <u>discrete</u> power level" (*e.g.* JA-315-17), which GBT had previously defined as set forth in the foregoing paragraph, and the examiner withdrew his rejection and allowed the claims. (JA-318).

In their zest to obtain their desired construction, Defendants ignore the clear distinction between these two <u>different</u> terms, "[first/second] discrete power level" vs. "[first/second] power level," and seek to limit the former to GBT's description of the latter in clear contradiction to what is expressed in the prosecution history. Thus, contrary to Defendants' argument (D.I. 201/286 at 24), GBT never stated that "discrete power level" means "constant power level." Indeed, the word "constant" does not appear anywhere in the prosecution history and appears in the specification only in connection with the description of Figure 6, and as set forth above, when GBT wanted to claim "constant power level" rather than "discrete power levels," it did so.

GBT did not in any way disavow non-constant, discrete preamble transmissions from the scope of the "discrete power level" limitation. Rather, GBT's expression of the "[first/second] discrete power level" as "requir[ing] that the power levels of the preamble transmissions are discretely different" (JA-291) is entirely consistent with the plain and ordinary meaning of "discrete."

Moreover, Defendants may argue that the terms "power level" and "discrete power level" are synonymous or that the latter is a more narrow variant of the former, but they are in fact entirely separate terms with different meanings. As a matter of law, "discrete" does not merely modify or narrow the term "power level" – "discrete power level" is a different phrase

---

[8] The claims at issue were designated as claims 43-46 in the '267 patent application, and issued as claims 23-26 <u>after</u> being further amended to recite a "[first/second] discrete power level."

altogether. Different claim terms are legally presumed to have different meanings unless the specification or prosecution history dictates otherwise. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (refusing to construe "'partially hidden from view' to have the same meaning as 'generally hidden from view' or 'at least partially hidden from view'"); *see also Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (applying presumption that different terms have different meanings, and declining to equate the terms "drive bay" and "drive bay slot"). As noted above, the '267 prosecution history makes clear that the two phrases have entirely different meanings.

Finally, Defendants incorrectly argue that GBT stipulated to Defendants' proposed construction in the Texas litigation. One need only review the table attached to the Texas court's *Markman* ruling to see that this argument is incorrect. (JA-1249-54). It is apparent that no special construction was accorded to the term "discrete," and the Texas court certainly did not find the term required a constant power level (by stipulation or otherwise). (*Id*.).

### F.     Transmitting if No Acknowledgement is Detected/Received

Defendants assert that arguments made during prosecution of the '267 patent application concerning transmission of the claimed preambles at "selected spacing" or "intervals" were only made with respect to claims that explicitly recited such spacing or intervals, but this is not correct. (D.I. 210/286 at 28-29). During prosecution of the '267 patent application, claims 47-49 (issued claims 27-29) were rejected over the Ozluturk patent. Contrary to Defendants' assertion, these claims did not recite a "predetermined interval" between preamble transmissions. Rather, they recited the same limitation at issue here: "if NO acknowledgement corresponding to the first access preamble is detected, transmitting a spread access preamble from the MS transmitter at a second discrete power level …." (JA-285-87). In order to distinguish Ozluturk, GBT specifically argued these claims required "a **separation or delay between preamble transmissions** while

14

the mobile station essentially listens for an acknowledgement. * * * The station sends the next preamble transmission **only if the intervening period expires** without receiving an appropriate acknowledgement. By comparison, Ozluturk teaches continuously repeating transmissions ...." (JA-289, emphasis added). Accordingly, GBT clearly and unambiguously limited the scope of this limitation to require a "separation," "delay" or "intervening period" between preamble transmissions, each of which is synonymous with a "set time" as set forth in GBT's proposed construction. The fact that claims 50 and 58 specifically claim a "predetermined interval" between preamble transmissions does not erase the disclaimer with respect to those claims that do not.

Apple's own expert witness agrees with GBT's proposed construction. Dr. Acampora repeatedly asserted in his expert report and deposition that the claims require a "wait" period which is synonymous with a "set time" between preamble transmission: "The '267/'427 patent *waits* to ramp up until after the mobile has listened for an ACK." (JA-2110-11 at 122-23) (emphasis in original); "The '267 and '427 patents describe and claim a method in which, after each preamble transmission, the mobile station *waits* for a period of time to listen to the acknowledgement from the base station" (JA-2112 at 129) (emphasis in original); the claimed method "waits for the acknowledgment" (JA-2107, Acampora Dep. at 30:22-23); and "the focus of what's in the asserted claims ... is ... waiting for an acknowledgment" (JA-2108, Acampora Dep. at 255:9-10).

## II.    CONCLUSION

For the reasons set forth above and in GBT's Opening Brief, GBT respectfully requests that the Court adopt GBT's proposed constructions of the disputed claim terms.

Dated: November 19, 2012                    McCARTER & ENGLISH, LLP

                                            /s/ Daniel M. Silver
                                            Michael P. Kelly (# 2295)
                                            Daniel M. Silver (# 4758)
                                            Renaissance Centre
                                            405 N. King Street, 8th Floor
                                            Wilmington, DE 19801
                                            (302) 984-6300
                                            *mkelly@mccarter.com*
                                            *dsilver@mccarter.com*

                                            Mark D. Giarratana
                                            Eric E. Grondahl
                                            CityPlace I
                                            185 Asylum Street
                                            Hartford, CT 06103
                                            (860) 275-6700
                                            *mgiarratana@mccarter.com*
                                            *egrondahl@mccarter.com*

                                            *Attorneys for Golden Bridge Technology, Inc.*

                                            KLEHR HARRISON HARVEY
                                            BRANZBURG LLP

                                            /s/ Sean M. Brennecke
                                            David S. Eagle (#3387)
                                            Sean M. Brennecke (#4686)
                                            919 Market Street, St. 1000
                                            Wilmington, DE  19801
                                            (302) 552-5518
                                            *deagle@klehr.com*
                                            *sbrennecke@klehr.com*

                                            *Attorneys for Golden Bridge Technology, Inc. with*
                                            *respect to claims asserted against Amazon.com,*
                                            *Inc., Hewlett-Packard Company and Palm, Inc.*

16