## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 1:10-cv-00428-SLR |
| | ) C.A. No. 1:11-cv-00165-SLR |
| APPLE INC., et al., | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

|  |  |
|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| AMAZON.COM INC., et al., | ) |
| Defendants. | ) |

## DEFENDANTS' CONSOLIDATED SURREPLY CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

PAGE

I. THE CLAIMED "PREAMBLE" IS A SIGNAL USED TO COMMUNICATE WITH THE BASE STATION THAT IS SPREAD BEFORE TRANSMISSION. ............ 1

    A.    Collateral Estoppel Prohibits GBT From Challenging the Texas Court's Construction of "Preamble" / "Access Preamble." ................................. 1

    B.    If the '267 Reexamination Claims Do Not Require that the Preamble is Spread Before Transmission, the Claims Are Invalid. ........................... 4

    C.    During the Original '267 Prosecution, GBT Confirmed that the Preamble is Spread the Same Way that Data is Spread. ....................................... 6

    D.    GBT Expressly Defined "Preamble" During the '267 Reexamination and '427 Prosecution By Submitting Its Express Definition. ........................ 7

    E.    The Claim Language Is Consistent With GBT's Prior Definition that the Preamble Is Spread Before Transmission. ............................................... 9

    F.    The Court Should Reject GBT's "Message Data" Limitation. ............... 9

    G.    GBT's "Distinguishing Codes" Limitation is Unsupported. .................. 10

II. THE COURT SHOULD DECLINE TO CONSTRUE "PACKET DATA." .................. 11

III. A "DISCRETE POWER LEVEL" IS A CONSTANT DISTINCT POWER LEVEL. ................................................................................................................. 11

    A.    The Ordinary Meaning of Transmitting "At" a "Discrete Power Level" is Transmitting at a Constant Distinct Power Level. ................................. 12

    B.    The Specification Describes Only Preambles Transmitted At Constant Distinct Power Levels. ...................................................................... 12

    C.    During Prosecution, GBT Confirmed Each Power "Level" is Constant. .............. 12

IV. THE PARTIES AGREE THE CLAIMS REQUIRE A DELAY PERIOD BETWEEN PREAMBLES. ................................................................................. 14

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Beery v. Thomson Consumer Elecs., Inc.,*
  No. 3:00cv327, 2004 WL 1945316 (S.D. Ohio Aug. 18, 2004)................................4

*Biovail Labs. Int'l SRL v. Intelgenx Corp.,*
  C.A. No. 09-605-LPS, 2010 WL 5625746 (D. Del. Dec. 27, 2010) ........................2, 3

*Gillespie v. Dywidag Sys. Int'l,*
  501 F.3d 1285 (Fed. Cir. 2007) ......................................................................8

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
  No. 2:05cv151, 2007 WL 294176 (E.D. Tex. Jan. 29, 2007)............................3-4

*Golight, Inc. v. Wal-Mart Stores, Inc.,*
  355 F.3d 1327 (Fed. Cir. 2004) ......................................................................7

*Hawksbill Sea Turtle v. FEMA,*
  126 F.3d 461 (3d Cir. 1997) ..........................................................................3

*Hockerson-Halberstadt, Inc. v. Converse Inc.,*
  183 F.3d 1369 (Fed. Cir. 1999) ..............................................................passim

*Intervet Am. v. Kee-Vet Labs.,*
  887 F. 2d 1050 (Fed. Cir. 1989) ......................................................................7

*Mallinckrodt, Inc. v. Masimo Corp.,*
  254 F.Supp.2d 1140 (C.D. Cal. 2003)................................................................4

*Medtronic, Inc. v. Guidant Corp.,*
  465 F.3d 1360 (Fed. Cir. 2006) ......................................................................5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,*
  C.A. No. 08-309, 2009 WL 4928029 (D. Del. Dec. 18, 2009) ............................2, 3

*Quantum Corp. v. Rodime, PLC,*
  65 F.3d 1577 (Fed. Cir. 1995) ........................................................................5

*Southwall Techs. Inc. v. Cardinal IG Co.,*
  54 F.3d 1570 (Fed. Cir. 1995) ........................................................................6

*Vitronics Corp. v. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996) ....................................................................8-9

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

**STATUTES**

35 U.S.C.
   § 305 ...........................................................................................................................5

**OTHER AUTHORITIES**

37 C.F.R.
   § 1.56(b)......................................................................................................................8
   § 1.97(h)......................................................................................................................8

I.   **THE CLAIMED "PREAMBLE" IS A SIGNAL USED TO COMMUNICATE WITH THE BASE STATION THAT IS SPREAD BEFORE TRANSMISSION.**

GBT does not dispute the following dispositive points:

- The '267/'427 specification "emphasize[s] that the preamble is spread before transmission," as the Texas Court correctly observed. (D.I. 210/286 at 7.)

- During the original '267 prosecution, GBT distinguished its claimed invention from the prior art on the basis that the preamble "is spread." (*Id.*)

- Never throughout the specification or file histories did GBT ever suggest that the "preamble" of its claimed invention could be transmitted without being spread.

- GBT stipulated, and the Court ordered, in the Texas case that "preamble" means "a signal used for communicating with the base station that is spread before transmission"—including the "preamble" recited in claims that do not separately recite a step where the preamble is spread. (D.I. 210/286 at 10, 17.)

- GBT expressly reaffirmed to the Federal Circuit that the preamble is "spread before transmission." (D.I. 210/286 at 11.)

- GBT submitted its stipulated, Court-ordered definition that the preamble is "spread before transmission" to the Patent Office during the '267 reexamination and '427 prosecution, requested that the Examiner "expressly consider" GBT's express definition, and never disavowed or retracted its definition. (*Id.* at 13-16.)

- All the asserted claims recite "spreading" or "spread-spectrum" communication, fully consistent with the claimed "preamble" being spread before transmission. (D.I. 210/286 at 16-18.)

In view of this undisputed record, the conclusion is inescapable that a person of ordinary skill in the art reviewing the specification, file histories, and claims would conclude that the claimed "preamble" is a signal that is spread before transmission.

A.   **Collateral Estoppel Prohibits GBT From Challenging the Texas Court's Construction of "Preamble" / "Access Preamble."**

The Court should adopt GBT's prior construction not only because it is correct on the merits, but also because GBT is estopped from challenging it. (D.I. 210/286 at 11-13.)

GBT's only argument against collateral estoppel is that the issue in the Texas case was not "identical." (D.I. 212 at 1-3.) The argument is meritless. First, GBT asserts that the Texas

case involved "different patents, claims and prosecution histories, all of which necessarily create different claim construction issues," and attempts to distinguish *Biovail* on the basis that "the same term within the same claim had previously been construed." (*Id.* at 1-2, citing *Biovail Labs. Int'l SRL v. Intelgenx Corp.*, C.A. No. 09-605-LPS, 2010 WL 5625746, at *4 (D. Del. Dec. 27, 2010).) But GBT cannot deny that here, just as in *Biovail*, the same term within the same claims was construed in the prior case. (*See* D.I. 210/286 at 11-12.) In Texas, the Court ordered that "access preamble" within '267 claims 27 and 29 is a "signal used for communicating with the base station that is spread before transmission." (*Id.*) Here, the very same claims 27 and 29 are the base claims within asserted dependent claims 51 and 52. (*Id.*) GBT is indisputably estopped from challenging the meaning of "[access] preamble" in these claims.

Furthermore, GBT identifies no relevant difference between claims 27 and 29 and the rest of the '267/'427 asserted claims, which all recite "[access] preamble" just the same, and the parties agree that "[access] preamble" has the same meaning throughout both patents. (D.I. 210/286 at 11-12; D.I. 212 at 2.) GBT asserts that "[i]n the Texas litigation, asserted claims explicitly recited that the preamble was spread before transmission" (D.I. 212 at 1), but this is highly misleading. Both in the Texas case and in the present case, some asserted claims separately recite a "spreading" step, and some asserted claims do not. (*See* D.I. 210/286 at 17.) The issue at hand is thus "identical" to the issue decided in Texas—the meaning of "[access] preamble" in '267 claims 27, 29, 51, 52, and the rest of the asserted '267/'427 claims.

Unable to identify any relevant differences in the intrinsic record, GBT contends that "additional prosecution history alone precludes the application of collateral estoppel." (D.I. 212 at 2, citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, C.A. No. 08-309, 2009 WL 4928029, at *16 n. 9 (D. Del. Dec. 18, 2009).) But *Power Integrations* does not stand

for this erroneous statement of law.  There, Judge Stark held that collateral estoppel did not apply only because "there have been *significant* subsequent developments in the '851 patent's prosecution history." *Power Integrations*, 2009 WL 4928029, at *16 n. 9, quoting *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 477 (3d Cir. 1997) ("When *significant new* facts arise out of a continuing course of conduct, the issues in a successive suit *may* fail to constitute the same 'issue' as to merit preclusive effect.") (emphasis added).  Under GBT's view, the doctrine of collateral estoppel would not exist, because "new" facts arise after every judgment.  The threshold question is whether any facts are both "new" and "significant."  Here there are no such facts.

GBT argues that the September 2006 reexamination history is "new" because it was not available at the time of the Texas *Markman* hearing, and that the "complete" reexamination file history was not available in Texas (D.I. 212 at 3), but these are red herrings.  Collateral estoppel took effect not at the time of the *Markman* ruling, but months later when the Texas court entered judgment against GBT based on the construction of "[access] preamble."  *See* D.I. 210/286 at 11 (the construction of "[access] preamble" was necessary to the invalidity judgment), 18-19; *Biovail*, 2010 WL 5625746 at *4 (collateral estoppel based on "a judgment for which the [prior] claim construction was necessary").  And GBT's cited cases reflect that evidence from non-final reexamination proceedings is part of the "intrinsic record" as soon as it is submitted in the public PTO file.  (*See* D.I. 210/286 at 12-13.)  GBT chose not to submit its reexamination argument in Texas, and cannot now re-litigate the same issue that the Texas court decided.

GBT notes that the Texas court declined to consider evidence not presented to the Magistrate Judge (D.I. 212 at 3, n. 2), but that was because GBT tried to present an untimely new argument based on the old original '267 file history.  *Golden Bridge Tech., Inc. v. Nokia, Inc.*,

3

No. 2:05cv151, 2007 WL 294176, at *2 n. 5 (E.D. Tex. Jan. 29, 2007).  By contrast, GBT's September 2006 reexamination filing could have been submitted to the court as "new" evidence any time after it was filed and prior to the Texas court's invalidity rulings.

GBT also fails to show that the reexamination history regarding "message data" is "significant" to the construction of "preamble."   As Defendants demonstrated, GBT's reexamination arguments were based on different, separately-recited claim elements regarding the timing of sending the preamble, not the term "preamble" itself, which GBT expressly defined in the same reexamination.   (D.I. 210/286 at 19.)   GBT states only that it disagrees with Defendants (D.I. 212 at 8), but fails to rebut Defendants' showing.

Moreover, the Texas court correctly rejected the same argument GBT now presents—that the construction of "[access] preamble" requires the preamble to be transmitted without message data—and did so in December 2006, *after* GBT's September 2006 reexamination filing.  (*See* D.I. 210/286 at 18-19.)  If GBT's September 2006 reexamination arguments were new, relevant intrinsic evidence, GBT could have, would have, and should have submitted them in Texas, and cannot re-litigate the same issue now after waiving its opportunity in the prior case.[1]

**B.    If the '267 Reexamination Claims Do Not Require that the Preamble is Spread Before Transmission, the Claims Are Invalid.**

Defendants' proposed construction should also be adopted because if it were not adopted, the asserted '267 patent claims would be invalid for improper broadening during reexamination.

---

[1] GBT's cited *Beery* and *Mallincrodt* cases (D.I. 212 at 2-3) are inapposite because both involved materially different claim language, specifications, and file histories, unlike the present case. *See Beery v. Thomson Consumer Elecs., Inc.*, No. 3:00cv327, 2004 WL 1945316, at *10 (S.D. Ohio Aug. 18, 2004) (construction of "operator" in '734 patent does not result in collateral estoppel for '952 patent, because "material differences exist between the claim language and specifications of the '734 and '952 patents"); *Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp. 2d 1140, 1148-50 (C.D. Cal. 2003) (collateral estoppel did not apply to "different patents with varying specifications, claim language, and prosecution histories").

The Patent Statute prohibits claims from being broadened during reexamination.  35 U.S.C. § 305.  "[A] violation of 35 U.S.C. § 305 is an invalidity defense in a patent infringement action."  *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).  A claim is impermissibly broadened "if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent."  *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1374 (Fed. Cir. 2006).

All of the original '267 patent claims directed to mobile stations recited the term "[access] preamble," which was defined by GBT during original prosecution and through final judgment in the Texas case as a signal that is spread before transmission.  GBT now argues that because the '267 reexamination resulted in "new claims," the new and amended claims no longer require the preamble to be spread before transmission.  (D.I. 212 at 1-2.)  If that is true, then the asserted '267 claims (all of which were new or amended during reexamination) have been impermissibly broadened.  Under GBT's view, the asserted '267 reexamination claims can read on a mobile station that transmits a signal that is not spread before transmission—that is, they contain within their scope potential apparatuses or processes "which would not have infringed the original patent."  *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1374 (Fed. Cir. 2006).[2]

Defendants contend that under the proper claim construction, the '267 claims were not impermissibly broadened in this respect.  However, if the Court agrees with GBT that the asserted '267 claims do not require a preamble that is spread before transmission, the Court should also rule that the claims are invalid for impermissible broadening.  *See Hockerson-*

---

[2] Original '267 claims 23-29 were directed to mobile stations, while claims 1-22 were expressly directed to base station and baseband processor components.  Under GBT's view, a mobile station that does not spread a preamble could infringe the "new" claims without infringing any of the original patent claims.

*Halberstadt, Inc. v. Converse Inc.,* 183 F.3d 1369, 1373 (Fed. Cir. 1999) ("Whether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction.").

> **C.     During the Original '267 Prosecution, GBT Confirmed that the Preamble is Spread the Same Way that Data is Spread.**

After arguing that its August 6, 2002 remarks to the PTO defined the term "preamble" itself, including that the preamble "is spread" (*see* D.I. 208/284 at 15-16, D.I. 210/286 at 9), GBT now argues that the discussion "pertains only to claims that explicitly recite spreading." (D.I. 212 at 5.) But GBT's discussion was not limited to any particular claims:

> Another disclosed distinction is that ***the access preamble here*** is itself a form of code data (e.g. a signature) that ***is spread*** in essentially the same manner as other data.  For example, Fig. 4 shows ***spreading of the preamble*** (see also p. 9, lines 12-20); and Fig. 3 shows the matched filter 315 de-spreading signals before processing for preamble recognition (see also p. 7, lines 15-20).  . . . By comparison, Ozluturk teaches simply transmitting spread codes . . . Transmission of a spreading code only is not a transmission of a ***spread access preamble***.

(JA-289, 8/6/02 Applicant's Remarks at 5 (emphasis added).)  These remarks did not say "in claims that expressly recite spreading the preamble, the preamble is spread" as GBT now suggests.  Rather, GBT explained that the "access preamble"—as a matter of definition, without reference to any specific claims—"is spread in essentially the same manner as other data."  "[A]rguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary."  *Southwall Techs. Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579 (Fed. Cir. 1995).

GBT argues that its file history remarks were "insufficient to constitute a disclaimer." (D.I. 212 at 5-6.)  But no disclaimer is required.  The specification "emphasizes" that the preamble is spread, as GBT does not dispute.  This is the only meaning the specification supports.  GBT then <u>confirmed</u> this meaning during prosecution, and also incidentally disclaimed any possible broader meaning, when it explained that the preamble "is spread."

GBT further notes that along with its prosecution remarks, it amended claims 47 and 49 to recite a certain "spreading" step. (D.I. 212 at 5.) But as noted above, GBT's unqualified statement that the preamble "is spread" was not limited to those claims or to any other particular claims, in contrast with the *Golight* case GBT cites. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1333 (Fed. Cir. 2004) (patentee argued only that the prior art "is different from those *particular* claims (pending claims 6 and 9-15)") (emphasis in original).

GBT finally implies that its prosecution remarks were "erroneous," as in the *Intervet* case. (D.I. 212 at 6, quoting *Hockerson-Halberstadt, Inc.*, 222 F.3d at 957, citing *Intervet Am. v. Kee-Vet Labs.*, 887 F. 2d 1050 (Fed. Cir. 1989).) But *Intervet* deals with the unusual situation where the patent attorney mistakenly misstated the claim language. *Intervet*, 887 F.2d at 1054 ("the attorney made the unqualified and now admittedly untrue statement that 'the claims are restricted to a single vaccination scheme.'"). Here, GBT carefully explained how its invention contemplates that the preamble "is spread." GBT's discussion was just like that in *Hockerson-Halberstadt*, where the patentee distinguished the prior art on the basis that its footwear "provid[es] a much narrower groove," as a general matter not limited to specific claims. *Hockerson-Halberstadt*, 222 F.3d at 954. The Federal Circuit's comments apply equally here:

> Here, unlike *Intervet*, no conspicuous error exists. *The term . . . is present in all . . . claims of the . . . patent. Thus the inventor's statements . . . apply with uniform force to all the claims.* Accordingly, a reasonable competitor reading the . . . prosecution history would have no reason to believe that a mistake was made or that the inventor meant anything other than what he said.

*Hockerson-Halberstadt*, 222 F.3d at 957 (emphasis added).

### D.   GBT Expressly Defined "Preamble" During the '267 Reexamination and '427 Prosecution By Submitting Its Express Definition.

GBT does not dispute that it submitted its agreed definition of "preamble" in the '267 reexamination and '427 prosecution, requested that the Examiner consider it, and never retracted

that definition. (*See* D.I. 210/286 at 13-16.) GBT only attempts to downplay the significance of its express definition, but "[t]he patentee is held to what he declares during the prosecution of his patent." *Gillespie v. Dywidag Sys. Int'l*, 501 F.3d 1285, 1291 (Fed. Cir. 2007).

GBT contends that submitting its express definition in an IDS cannot be deemed an admission that the information "is 'material,'" by PTO regulation. (D.I. 212 at 3.) But GBT misstates the cited regulation: the filing of an IDS is not by itself an admission that the information is "material *to patentability*" in that it "refutes, or is inconsistent with," the applicant's arguments for patentability. 37 C.F.R. §§ 1.97(h), 1.56(b) (emphasis added). Defendants do not argue that GBT's IDS filing was inconsistent with GBT's other arguments. To the contrary, as Defendants explained (D.I. 210/286 at 15), GBT's express definition in the '267 reexamination and '427 file history was fully consistent with the meaning GBT had already taught in the '267 specification and relied upon to distinguish Ozluturk during the original '267 prosecution—namely, that the preamble is spread before transmission.

GBT also notes that the PTO applies a different claim construction standard than the courts (D.I. 212 at 4), but the PTO's standard is irrelevant. The issue at hand is how this Court should construe the term, and the Court should construe the term as a person of ordinary skill in the art would understand it from the intrinsic record. Here, GBT not only submitted its express, Court-ordered definition during the '267 reexamination and '427 prosecution, but also, crucially, never retracted or qualified its express definition, in stark contrast with other submitted materials that GBT attempted to explain away in the very same filings. (*See* D.I. 210/286 at 14-16.)

GBT finally tries to distinguish Defendants' cited cases on their facts (D.I. 212 at 4-5), but Defendants cite these cases not for their facts, but for their controlling black-letter law: when a "special definition of the term is clearly stated in the . . . file history," it is binding (*Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), and "statements made during prosecution commit the inventor to a particular meaning of a claim term that is binding during litigation" (*Hockerson-Halberstadt*, 222 F.3d at 956). To allow GBT to back away from its express definition "would undercut the public's reliance on a statement that was in the public record." *Hockerson-Halberstadt*, 222 F.3d at 957.

### E.   The Claim Language Is Consistent With GBT's Prior Definition that the Preamble Is Spread Before Transmission.

GBT argues that only some claims expressly recite that the preamble is "spread" (D.I. 212 at 5-6), but GBT ignores the critical distinction between the "thing" (the preamble), and various steps or functions that one or more entities may perform on that thing (transmitting, spreading, etc.). (*See* D.I. 210/286 at 17-18.) Defendants' construction of "preamble"—which is GBT's stipulated, court-ordered prior construction—does not add a "spreading" step into claims where no such step is recited. (*Id.*)

GBT similarly argues that '427 patent claim 14 and various dependent claims do not expressly recite that the preamble is spread. (D.I. 212 at 7.) Again, GBT misses the point. Defendants do not contend these claims require a step of "spreading the preamble." In these claims, GBT chose to recite the "thing" (the preamble, a signal that is spread before transmission) plus a step of "transmitting" that signal, and chose not to recite a step of "spreading" that signal. These claims do not change the meaning of "preamble" required by the intrinsic record and are fully consistent with that meaning. (*See* D.I. 210/286 at 16-17.)

### F.   The Court Should Reject GBT's "Message Data" Limitation.

GBT fails to address the fact that the Texas court rejected the same "message data" claim construction argument GBT advances. (*See* D.I. 210/286 at 18-19.) Defendants further demonstrated that GBT's arguments during reexamination were based on different, separately-

recited claim elements regarding the <u>timing</u> of sending the preamble, not the term "preamble" itself. (*Id.* at 19.) GBT states only that it disagrees with Defendants (D.I. 212 at 8), and fails to rebut Defendants' showing. There is no clear and unambiguous disclaimer here.

### G.   GBT's "Distinguishing Codes" Limitation is Unsupported.

GBT cites nothing to require that the Court inject into the simple term "preamble" the limitation of "one or more codes that distinguish one preamble from another," as GBT proposes. (D.I. 212 at 8-10.) GBT first rehashes its incorrect assertion that its August 6, 2002 remarks in the original '267 file history were "clearly made . . . to distinguish the prior art." (D.I. 212 at 13.) As Defendants explained at length and GBT fails to dispute, GBT's file history argument distinguished the prior art only based on "spreading" the preamble, not based on transmitting a "code"—much less "codes that distinguish one preamble from another"—and indeed GBT noted that the prior art discloses transmission of "codes." (*See* D.I. 210/286 at 20 (citing JA-289).)

GBT further claims that "*the claimed* access preamble is formed using distinguishing codes 'so that identical codes are not used in the same location for two different preambles.'" (D.I. 212 at 9 (emphasis added).) Again, GBT's assertion is simply not true. As Defendants explained, far from requiring that "the claimed" preamble must comprise "distinguishing codes" as GBT asserts, the full specification context around GBT's cited snippet teaches that distinguishing "codes" is just one option that "can be" used, from among "many ways" of generating preamble waveforms. (*See* D.I. 210/286 at 21, quoting '427 col. 8:1-20.)

GBT further argues, for the first time in its reply brief, that "the claim language itself requires that the codes distinguish one access preamble from another." (D.I. 212 at 9.) But GBT's argument is incorrect. The claim language does not recite that the claimed "preambles" must include "codes" at all, except in the few instances where the claims expressly recite "preamble codes" (such as '427 claims 16 and 20), which claims only confirm that a "preamble"

by itself need not comprise "codes." And contrary to GBT's suggestion (D.I. 212 at 10), Defendants do not rely on claim differentiation here. The point is that where GBT wanted to claim "preamble codes," it did so, and there is no basis whatsoever to inject a "distinguishing codes" limitation into the meaning of "preamble."[3]

GBT finally argues that Defendants' construction of "preamble" is overly broad because it would encompass various communication signals. (D.I. 212 at 10.) But Defendants' proposal is the definition that GBT taught in its specification, stipulated in the Texas case, and defined during the '267 reexamination and '427 file history, which GBT is estopped from challenging.

## II.  THE COURT SHOULD DECLINE TO CONSTRUE "PACKET DATA."

Defendants are unaware of an infringement or invalidity issue that turns on the meaning of "packet data," and GBT does not identify any such dispute; to the contrary, GBT only suggests the issue "may be material in the future." (D.I. 212 at 11, n. 6.) Rather than accept GBT's invitation to wander into the darkness—particularly when GBT's proposal is ambiguous and unsupported—the Court should defer this term to such later time as a ripe dispute arises.

## III.  A "DISCRETE POWER LEVEL" IS A CONSTANT DISTINCT POWER LEVEL.

GBT misstates the reasons why "discrete power level" means a constant distinct power level, as GBT previously agreed in the Texas case and agreed in this case in August 2011. (D.I. 210/286 at 25-26.) The issue is not whether the word "discrete" means "constant," as GBT suggests. The parties agree that each preamble power level is "discrete" in that each preamble

---

[3] GBT also cites out-of-context expert deposition testimony (D.I. 212 at 9-10) which changes nothing about GBT's patents. The full context shows that Apple's expert discussed only an "access preamble" in "UMTS specifications" documents or as a general matter, *not* in GBT's patents, as he carefully explained: "You say 'the access preamble used in the accused devices.' *That's not the access preamble of the patent.* Let's just make sure we're on the same page." (JA-2116-2118 (Kakaes Tr.) 52:23-53:1 (emphasis added), 52:15-60:25.)

power is distinct and non-overlapping. The reason "discrete power level" means a constant distinct power level is that the intrinsic evidence teaches and requires this meaning.

### A.     The Ordinary Meaning of Transmitting "At" a "Discrete Power Level" is Transmitting at a Constant Distinct Power Level.

GBT does not dispute that the ordinary meaning of transmitting preambles "at" increasing "discrete power levels," in the context of GBT's claims, is transmitting preambles at <u>constant</u> distinct power levels. (*Compare* D.I. 210/286 at 22 *with* D.I. 212 at 11-14.) Each preamble is transmitted "at" one power "level." The Court should accordingly construe this phrase with its undisputed ordinary meaning.

### B.     The Specification Describes Only Preambles Transmitted At Constant Distinct Power Levels.

GBT does not dispute that the specification contemplates only that "[t]he transmitted power during each preamble is constant," with each preamble transmitted "at" a constant power level. (*See* D.I. 210/286 at 22-23.) GBT vaguely suggests there might be other embodiments (D.I. 212 at 12), but cites no embodiment where preambles are transmitted at non-constant power levels. Defendants do not seek to "read the specification into the claims." Rather, the specification confirms the claims' undisputed ordinary meaning, as does the file history.

### C.     During Prosecution, GBT Confirmed Each Power "Level" is Constant.

GBT's reply brief argues for the first time that "power level" and "discrete power level" are "entirely separate terms" and that "[a]s a matter of law, 'discrete' does not merely modify or narrow the term 'power level.'" (D.I. 212 at 13-14.) This is incorrect. As a matter of law, and English grammar, and GBT's file history amendments and discussion, and the understanding of a person of ordinary skill in the art (JA-1996-2005), the word "discrete" does indeed modify the term "power level." During prosecution, GBT specifically amended the "power levels" recited

12

in its pending claims to recite "discrete power levels," thereby confirming that each preamble is transmitted both (1) "at" a constant power, and (2) at a distinct power level.

In its August 6, 2002 Amendment, GBT addressed two sets of pending claims. Pending claims 43-46 recited "power levels," and pending claims 47-49 were amended in the same filing to recite "discrete power levels." (JA-218-220, 293-94.) GBT first explained that the "power levels" require "a *complete* transmission of a preamble *at* either 'level,' *as claimed*," where each "*entire*" preamble is "*completely at* one of the different levels," in contrast with Ozluturk. (*See* D.I. 210/286 at 24-25.) GBT thus confirmed the ordinary meaning: transmitting "at" a certain power "level" means transmitting at a constant power level throughout the preamble. (*Id.*)

*Later* in the same Amendment—not "first" as GBT incorrectly suggests (D.I. 212 at 12)—GBT further explained that pending claims 47-49, which previously recited only "power levels," had been amended to "expressly require that *the power levels* of the preamble transmissions are discretely different." (JA-291 (emphasis added).) Claims 47-49 recited transmission of preambles "at" constant "power levels"—"the power levels"—just the same as claims 43-46 as explained earlier in the Amendment. But claims 47-49 were also further limited to require "discrete" power levels, meaning that each power level is "discretely different." (*Id.*)

In response to this Amendment, the Examiner allowed claims 47-49 and maintained the rejection of claims 43-46. (JA-295-301.) GBT then amended the "power levels" of claims 43-46 to recite "discrete power levels," and the Examiner allowed them. (JA-312-317.)

This prosecution history is clear. Where the claims recite preambles transmitted "at" various "power levels," each preamble is transmitted "at" that power level, "completely" throughout the "entire" preamble (that is, the power is constant). And where the claimed "power

levels" are modified to further recite "*discrete* power levels," that further means that in addition to being constant, the each power level is "discretely different" (distinct and not overlapping).

GBT cites cases for the proposition that different claim terms are presumed to have different meanings. (D.I. 212 at 14, citing cases.) But Defendants do not claim that "power level" and "discrete power level" have the same meaning. As GBT confirmed during prosecution, transmission "at" a "power level" means transmission at a <u>constant</u> power level, and transmission at a "discrete power level" means transmission at a constant, <u>distinct</u> power level.

GBT also notes that some '427 claims recite "constant power levels" (D.I. 212 at 12), but these recitations do not change or broaden the meaning of "discrete power levels" required by the intrinsic evidence. Both terms require power levels that are constant, while "discrete" power levels require power levels that are both constant and distinct.

## IV.   THE PARTIES AGREE THE CLAIMS REQUIRE A DELAY PERIOD BETWEEN PREAMBLES.

| Claim language | Agreed Construction |
|---|---|
| Transmission of multiple [access] preambles (all asserted '267/'427 claims) | The asserted claims require a set time between each preamble transmission. |

GBT's reply brief clarifies its proposal that transmitting a preamble "within a set time" means there is "a 'separation,' 'delay,' or 'intervening period' between preamble transmissions," and that "the claims require a 'wait' period which is synonymous with a 'set time' between preamble transmissions." (D.I. 212 at 15.) In the interest of compromise, Defendants will agree with GBT that the asserted '267/'427 claims require a "set time" between preambles in this sense. The specification, file history, and expert opinions of record all support this construction as to the '267/'427 claimed invention generally. GBT also explained to the Texas Court that "GBT's solution" of its claimed invention is that the mobile station will re-transmit a preamble "within a period of time" if no acknowledgement is received. (JA-2023, JA-2120.)

To be clear, the agreed construction, based on the common specification and file history, should apply to all of the asserted '267/'427 claims, all of which include various forms of the same triggering concept. GBT does not explain how its arguments and disclaimers could apply only to the '267 claims and not the '427 claims. For example, the original '267 file history passage (which is part of the '267 reexamination and '427 file histories) cited in GBT's reply distinguishes GBT's entire disclosed invention from the prior art, not limited to specific claims:

> There are *several features of the access methodology disclosed in this case that distinguish over the Ozluturk Patent*, which are specified in different ones of the claims (47-49) [sic, 43-49[4]] that are still at issue . . . Also, *there is a separation or delay between preamble transmissions* while the mobile station essentially listens for the acknowledgement. Application Fig. 6, shows examples of four preamble transmissions separated by pilot signal transmissions (aP), although there could be silence (no signal transmitted) in the *intervening intervals . . ..* The station sends the next preamble transmission only if the *intervening period* expires . . .. By comparison, Ozluturk teaches continuously repeating transmissions and a linear continuous power ramp-up [and not] *separations between preamble transmissions.*

(JA-289, emphasis added.)  If this discussion were deemed to apply only to specific claims and not to GBT's '267/'427 disclosed invention generally, the discussion would apply only to those claims that recite a "predetermined interval" or the like.[5]  (*See also* D.I. 208/284 at 29-30 (the common "specification is clear that there is a set time between preamble transmissions").)

---

[4] The cited office action response discussed all of pending claims 43-49, notwithstanding the typographical error "47-49." (*See* JA-289-292.)
[5] GBT's reply brief erroneously suggests that in this filing it specifically distinguished pending claims 47-49 based on the "separation or delay" limitation. (D.I. 212 at 14.)  In fact, after providing the general disclaimer quoted above, GBT distinguished only pending claims 43-46 on the basis that these claims require preamble re-transmission "within some time, 'after' a preamble transmission . . . [which] requires some delay separating preamble[s]." (JA-290-91.) Claim 43 recited re-transmitting "by a time following" the first preamble, and claim 44 similarly "upon expiration of a predetermined interval" (and claims 45-46 depended from these claims). (JA-218-220.)  GBT did not separately distinguish pending claims 47-49 on this basis, as those claims do not recite a "predetermined interval" or the like. (*See* D.I. 212 at 14-15; JA-291-294 (claims 47-49 specifically distinguished only for "spreading,"not delay between preambles).)

Dated:  November 29, 2012

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Timothy S. Teter
Lowell D. Mead
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
Tel:  (650) 843-5000
Facsimile:  (650) 849-7400
tteter@cooley.com
lmead@cooley.com

By:   */s/ Richard L. Horwitz*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        1313 N. Market Street
        Hercules Plaza, 6th Floor
        Wilmington, DE  19899-0951
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant Apple Inc.*


POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Robert T. Cruzen
Kristen L. Reichenbach
Todd M. Siegel
Klarquist Sparkman, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300
Facsimile: 503-595-5301
robert.cruzen@klarquist.com
kristen.reichenback@klarquist.com
todd.siegel@klarquist.com

By:   */s/ Richard L. Horwitz*
        Richard L. Horwitz (#2246)
        David E. Moore (#3983)
        1313 N. Market Street
        Hercules Plaza, 6th Floor
        Wilmington, DE  19899-0951
        Tel:  (302) 984-6000
        rhorwitz@potteranderson.com
        dmoore@potteranderson.com

*Attorneys for Defendant Amazon.com, Inc.*

POTTER ANDERSON & CORROON LLP


By: */s/ Philip A. Rovner*_____

*OF COUNSEL:*

Fred I. Williams (admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
300 West 6th Street, Suite 1900
Austin, Texas 78701
(512) 499-6200

Eric J. Klein (admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800

John Wittenzellner (admitted *Pro Hac Vice*)
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1200

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Lenovo (United States) Inc.*


RICHARDS, LAYTON & FINGER, PA


OF COUNSEL:

James W. Morando
Matthew A. Hollander
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 954-4400
Facsimile: (415) 954-4480
jmorando@fbm.com
mhollander@fbm.com

*/s/ Jaclyn C. Levy*_____
Steven J. Fineman (#4025)
Jaclyn C. Levy (#5631)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King St.
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
levy@rlf.com
*Attorneys for Defendant Dell Inc.*

17

MORRIS NICHOLS ARSHT & TUNNELL

By:  /s/ Jack Blumenfeld
   Jack Blumenfeld (#1014)
   1201 N. Market St.
   P.O. Box 1347
   Wilmington, DE 19899
   302-658-9200
   jblumenfeld@mnat.com

OF COUNSEL:

Mitchell G. Stockwell (GA Bar No. 692912)
Vanessa M. Blake (GA Bar No. 726744)
K. James Sangston (GA Bar No. 626171)
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
404.815.6500
mstockwell@kilpatricktownsend.com
vblake@kilpatricktownsend.com
jsangston@kilpatricktownsend.com

*Attorneys for Defendant, Motorola Mobility, LLC*

OF COUNSEL:

John H. McDowell, Jr.
Benjamin J. Setnick
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
(214) 659-4400


James V. Mahon
Andrews Kurth LLP
4819 Emperor Blvd., Suite 400
Durham, NC 27703
(919) 599-2639

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Rodger D. Smith II
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendant Sony Ericsson Mobile
Communications (USA) Inc.*

PARKOWSKI , GUERKE & SWAYZE, P.A.

By: */s/ John C. Andrade*
    John C. Andrade (# 1037)
    Michael W. Arrington (# 3603)
    116 West Water Street
    P.O. Box 598
    Dover, DE 19903
    (302) 678–3262
    jandrade@pgslegal.com
    marrington@pgslegal.com
*Attorneys for Defendants, Pantech Corp. (formerly known*
*as Pantech Co. Ltd.) and Pantech Wireless Inc.*

FISH & RICHARDSON P.C.

By: */s/ Thomas Lee Halkowski*
    Thomas Lee Halkowski (No. 4099)
    222 Delaware Avenue, 17th Floor
    P.O. Box 1114
    Wilmington, DE  19801
    Telephone:  (302) 652-5070
    Facsimile:  (302) 652-0607
    halkowski@fr.com

*Attorneys for Defendants*
*LG Electronics, Inc. and LG Electronics*
*Mobilcomm USA, Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Stephen S. Korniczky
Martin R. Bader
Graham M. Buccigross
SHEPPARD MULLIN RICHTER
  & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA  92130
(858) 720-8900

*Thomas C. Grimm*
Thomas C. Grimm (#1098)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tgrimm@mnat.com

*Attorneys for Defendants HTC Corporation, HTC*
*(B.V.I.) Corporation, HTC America,*
*Inc., and Exedea, Inc.*

19

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

Robert T. Haslam
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood City, California 94605
Phone: (650) 632-4700
Fax: (650) 632-4800

Michael M. Markman
Leslie N. Harvey
Robert J. Williams
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
Phone: (415) 591-6000
Fax: (415) 591-6091

By: */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    1313 N. Market Street
    Hercules Plaza, 6th Floor
    Wilmington, DE  19899-0951
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendants/Counterclaimants*
*Hewlett-Packard Company and Palm, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 29, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on November 29, 2012, the attached document was electronically mailed to the following person(s)

Michael Kelly
Thomas A. Stevens
Daniel M. Silver
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
mkelly@mccarter.com
thstevens@mccarter.com
dsilver@mccarter.com
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

Eric E. Grondahl
Mark D. Giarratana
McCarter & English, LLP
City Place I
185 Asylum Street
Harford, CT 06103
egrondahl@mccarter.com
mgiarratana@mccarter.com
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

Stephen A. Saltzburg
George Washington University Law School
2000 H Street, NW
Washington, DC  20052
ssaltz@law.gwu.edu
*Attorneys for Plaintiff*
*Golden Bridge Technology Inc.*

/s/ *David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

971919/35716