IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 10-428-SLR |
| APPLE INC., et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 25th day of April 2013, having reviewed the motion for

reconsideration filed by plaintiff Golden Bridge Technology, Inc. ("GBT") and the

supplemental papers filed in connection therewith;

IT IS ORDERED that the court's decision on non-infringement found in its April 9,

2013 memorandum opinion (D.I. 322) shall not be modified,[1] for the reasons that follow:

1. **Background.** GBT filed this action against Apple Inc. ("Apple") and several

other defendants, alleging infringement of U.S. Patent Nos. 6,574,267 C1 ("the '267

patent"), as reexamined, and 7,359,427 ("the '427 patent") (collectively, "the patents-in-

suit"). (D.I. 1) The invention of the patents-in-suit relates to the establishment of

communication between a mobile station (also referred to as "MS"), such as a cellular

phone, and a base station (also referred to "BS") in a wireless cellular network. The

_____

[1]Although the court "granted" the motion for reconsideration (D.I. 325), it explained at the time that it only meant to review the merits of the motion, not that it meant to grant the relief sought. The court apologizes for any confusion this has caused.

mobile station attempts to connect with a base station using a "ramp up" process in which it transmits access preambles over a random access channel ("RACH"), starting at a low power level.  Once a base station detects an access preamble, it sends the mobile station an acknowledgement, after which the mobile station ceases transmitting access preambles and begins transmitting data or voice communications.  If no acknowledgement is received, the mobile station continues transmitting intermittent access preambles, each at a higher discrete power level, until either a maximum number of access preambles have been transmitted or a predetermined time has elapsed.

2.  The parties do not dispute that the accused products[2] use a RACH process in which a preamble signature ("signature" or "PRACH signature") is selected, repeated 256 times to form a preamble signature sequence ("signature sequence"), then combined with a scrambling code to form a PRACH preamble that is transmitted to a base station.  GBT submitted power spectra as evidence that the scrambling code "spreads"[3] the signature sequence by increasing the frequency range of the signature sequence.[4]

3.  The court construed "preamble"/"access preamble" to mean "a signal for communicating with the base station that is spread prior to transmission and is without

---

[2]Various Apple iPhone and iPad products.  (D.I. 1 at ¶¶ 88, 90, 102, 104)

[3]Apple disputes whether increasing the frequency range constitutes "spreading" under the parties' agreed construction.  (*See, e.g.*, D.I. 234 at 46-47)

[4]GBT often interchanged the terms "signature" and "signature sequence" in its summary judgment briefing.  The parties have since clarified that the signature sequence, not the signature, is spread by the scrambling code.

message data."[5]  (D.I. 319 at 7-17)  The court subsequently issued a memorandum opinion and order dated April 9, 2013 that granted, in relevant part, Apple's motion for summary judgment of non-infringement of all asserted claims.[6]  (D.I. 322, 323)  The court found that the accused devices do not read on the "access preamble" limitation because GBT's evidence was directed toward spreading the signature sequence during the generation of the PRACH preamble, not spreading the PRACH preamble itself.

4.  On April 10, 2013, GBT filed an emergency motion for reconsideration.  (D.I. 324)  The court heard oral argument the following day.  GBT asserts on reconsideration that the court failed to properly apply its claim construction of the "access preamble" limitation to the accused devices.  (D.I. 324, 328)

5.  **Discussion.**  As noted, the court adopted the following construction for the access preamble limitation:  "A signal for communicating with the base station that is spread before transmission and that is without message data."  The first part of the construction is consistent with that agreed to by GBT and Apple in the Texas litigation (and proposed by Apple instantly); the last phrase of the construction is consistent with GBT's proposed construction and the reexamination record.

6.  In contrast to its prior position in Texas, GBT changed its construction in this litigation, to wit:  "An access signal without message data and comprising one or more

---

[5]The court issued its claim construction jointly with another case, captioned *Golden Bridge Technology, Inc. v. Amazon.com Inc.* (Civ. No. 11-165), in which GBT is asserting the patents-in-suit against a number of other defendants.

[6]The court also denied Apple's motion for summary judgment of invalidity of all asserted claims.

3

codes that distinguish one access preamble/preamble from another and used during an access procedure to facilitate establishing a communication link between a base station and a remote station." (D.I. 193) Having had both its proposed claim construction and its evidence of infringement rejected, GBT attempts to identify a genuine issue of material fact sufficient to justify trial, arguing on reconsideration that the signature sequence is an access signal without message data that is spread before transmission, thus meeting the court's claim construction.

7. The backbone of GBT's theory is its contention that the signature sequence is a "digital signal." (*See, e.g.*, D.I. 253 at A867) However, that the signature sequence may be a digital signal is of no consequence. The court's construction requires a "signal for communicating" with the base station, not a signal that merely "facilitate[s] establishing a communication link," as initially proposed by GBT.

8. In its efforts to shoe-horn its infringement theory into the court's claim construction, GBT points to the expert opinion of Dr. Vojcic:

> [I]n the Accused Devices, **each access preamble is composed of two spreading codes without message data**. Each Accused Device first randomly selects a PRACH signature from a set of available PRACH signatures. PRACH signatures are Hadamard (or OVSF) codes of length 16 that are used as channelization codes in the WCDMA system. The selected PRACH signature is repeated 256 times to obtain a sequence of [4096] chips. The repeated PRACH signature code is then further spread with a PRACH scrambling code (which is a PN sequence of [4096] chips) available for the RA procedure for that cell. As indicated above, while the access preambles simultaneously transmitted by two or more users (or MS) may use the same PRACH scrambling code when communicating with the same BS, they would employ different PRACH signatures, due to random selection, to distinguish one access preamble from another and **facilitate establishing a communication link between each MS and the BS.** Accordingly, the access preambles of the Accused Devices literally meet GBT's proposed construction of the term. In view of the

4

foregoing, the access preambles of the Accused Devices necessarily also literally meet Apple's proposed construction of this term, i.e. a signal used for communicating with the base station that is spread before transmission.

(D.I. 225 at A113-14 ¶ 74) (emphasis added)

9. As is evident from the above, GBT's expert based his opinion on GBT's proposed construction.[7] By its construction, GBT tried to broaden the meaning of "signal" through use of the descriptive phrase "facilitate[s] establishing a communication link" to a base station. To "facilitate" means to make easier. **Collins English Dictionary** (10th ed. 2009). As argued by GBT, any component of the ultimate signal sent to the base station, even the signature before it is repeated, would arguably make communication possible (i.e., easier) and, therefore, could be said to facilitate communication. It is the notion of "facilitating," rather than "communicating," that distinguishes GBT's claim construction and infringement argument from the court's claim construction and its decision on non-infringement.

10. The undisputed evidence contained in the record presented during the summary judgment exercise[8] demonstrates that the accused devices require the **combination** of the signature sequence and the scrambling code in order to communicate with a base station. (See, e.g., D.I. 225 at A101-02 ¶ 48, A126 ¶ 101,

---

[7]The opinion as it relates to Apple's construction is conclusory, and does not specifically address GBT's current contention that the signature sequence alone constitutes a signal for communicating with the base station. Indeed, such a conclusion seems inconsistent with the correct explanation contained in the same opinion that "each access preamble is composed of two spreading codes."

[8]The court declines to review on reconsideration evidence (e.g., deposition testimony) that was not included in the summary judgment record.

A129 ¶ 107, A130 ¶ 111, A521-22 ¶ 148, A704, A710)  The fact that the signature

sequence is a digital signal that is spread by the scrambling code during generation of

the access preamble may meet GBT's proposed claim construction, but it does not

meet the claim construction the court adopted.  A signal for communicating with the

base station does not exist in the accused devices until the access preamble is

generated – the signature is multiplied to form the signature sequence which is then

spread by the base station's scrambling code.  Therefore, the signal for communicating

with the base station is not spread prior to transmission.  Despite GBT's new attorney

argument, the record evidence remains consistent with the finding of non-infringement

under the operating claim construction for this case.[9]

11. **Conclusion.**  For the foregoing reasons and pursuant to the memorandum

order dated April 9, 2013, the court declines to change its summary judgment finding of

non-infringement of all claims that were asserted against Apple.  Even considering

GBT's supplemental submissions and citations to the record, the court finds no expert

testimony or evidence of record that raises a genuine issue of material fact to preclude

summary judgment under the court's claim construction.

United States District Judge

---

[9]In addition to the record citations identified above, the "overwhelming" evidence
cited by GBT in its reconsideration argument does not actually address the question of
whether the signature sequence is "a signal for communicating with the base station:"
(1) the power spectra figures prepared by its expert (D.I. 255 at A101-03 ¶¶ 48-49,
A113-14 ¶ 74, A326-42 ex. C), which relate only to whether the accused devices
practice "spreading;" and (2) expert testimony that explains how a mobile station
determines which base station to select prior to transmitting an access preamble (*id.* at
A153 ¶ 166, A368 ¶¶ 59-60, A370 ¶ 64, A393 ¶ 122).

6